## Kenrick *against* Smick.

Whether an informal instrument transferring an interest in real estate shall be construed a conveyance, or only an agreement, depends not on any particular words and phrases, but on the intention of the parties derived from the instrument itself, and, when that is doubtful, from the circumstances attending it.

Where an instrument purported to lease lots to the trustees of a church and their successors for ever, on condition of paying a certain semi-annual sum to the grantor, his heirs, &c., besides taxes, &c., with condition to be null and void on neglect to pay for three months when due and ten days' written notice; and authorized them to lease in any manner not inconsistent with the conditions, and to collect all rents due or to accrue; and by a memorandum shortly after attached, if within seven years they paid the principal money, with all rent and expenses, the grantor would give them a deed in fee-simple of the aforesaid leased property; *held* to be an executory agreement only.

A deed of conveyance of real estate does not merge in a second deed between the parties for the same estate, but one agreement may merge in a second if such was the intention.

Lease for years granted on condition to be null and void, becomes so *ipso facto* by the breach of the condition, and cannot be set up by recognition.

ERROR to the District Court of the city and county of *Philadelphia*, in which an ejectment was brought by Francis Patrick Kenrick against William Smick and Daniel Stokely, to recover a lot of ground situate on the west side of Second street, in Southwark, Philadelphia county. The defendants were tenants of the Second Presbyterian Church, who had their church building upon the adjoining lot. A verdict and judgment were rendered for the defendants.

Both parties claimed title under Dr E. S. Ely, in whom it was formerly vested. The plaintiff purchased the lot at a public sale made by Dr Ely for the price of $8000, and received a deed for it from him and his wife, dated 16th April 1836, and recorded 18th April 1836; the plaintiff paying $4000 in cash, and giving his bond secured by mortgage on the premises for the balance. The defendants contended that Dr Ely had previously conveyed it to them. From the oral evidence of Dr Ely and others, it appeared that Dr Ely purchased and paid for a part of the premises in June 1827, and another portion in May 1828, which together cost him $2300 and upwards. On the 6th May 1828 he executed the following instrument, which did not appear to have been acknowledged or recorded:

Know all men by these presents, that I, Ezra Stiles Ely, D.D., of the city of Philadelphia, having lately purchased of the heirs of John Stille, Esq., deceased, a certain lot of land, and brick

VII. — 6          D *

house thereon, situated in Southwark, in the county of Philadelphia, on South Second street, below Christian street; my title to which property being recorded in the office for recording deeds for the city and county of Philadelphia, in Deed Book G. W. R., No. 17, page 588, &c.; and having also purchased of Sarah M'Donald and others a certain lot of land, with a frame messuage thereon, adjoining the first described lot, the title to which last property is recorded as above, in Deed Book G. W. R., No. 22, page 235, &c., do hereby lease the same two lots of ground, with the houses thereon, and all the appurtenances of the same, unto the trustees of the Second Presbyterian Church in Southwark, and to their successors in office for ever, on the following conditions, namely, that the said trustees shall now and for ever hereafter, pay me semi-annually, and my heirs, executors and administrators after my decease, the sum of $69.90, lawful money of the United States, on the 6th day of November and on the 6th day of May in each year, besides paying all manner of taxes and ground-rents, and other charges, which may have accrued, or shall hereafter accrue, on said property; but if said trustees shall become indebted to me or my heirs for the amount of $139.80, and shall, for three months after the said sum has become due, neglect to pay the same, then this instrument, after ten days' notice to said trustees to this effect, given by me or my heirs in writing, shall become null and void.   I do also hereby empower and authorize said trustees to lease said property, in any manner not inconsistent with the above conditions, for any term of time; and to demand, sue for, collect and receive all rents or other dues which have become due to me, or shall hereafter accrue, so long as this lease shall be and continue in force.

In witness whereof I have hereunto set my hand and seal, this 6th day of May 1828.

E. S. ELY. [L. S.]

Signed, sealed and delivered in }
    presence of us,     }
    SUSANNA MITCHELL,
    HENRIETTA BURDEN.

Received May 2d 1829, of E. S. Ely, $300, being in full the sum paid by the trustees of the Second Church in Southwark, towards the lot of ground in Southwark, purchased by the said Ely of the heirs of John Stille, Esq., deceased; so that the said Ely has now paid the whole purchase money.

$300.                     JACOB MITCHELL,

President of the Board of Trustees of the Second Church of Southwark, and in behalf of the same.

In July 1829, Dr Ely paid towards the erection of a church on the lots about $2575, and on the 21st July 1829 the following

instrument was executed by him, and acknowledged on the 21st June 1832, and recorded on the 13th April 1836 :

Know all men by these presents, that I, Ezra Stiles Ely, D.D., of the city of Philadelphia, and State of Pennsylvania, having lately purchased of the heirs of John Stille, deceased, a certain lot of land and brick house thereon, situated in Southwark, in the county of Philadelphia, on South Second street, below Christian street, my title to which property has been recorded in the office for recording deeds for the city and county of Philadelphia, in Deed Book G. W. R., No. 17, page 588, &c.; and having also purchased of Sarah M'Dowell and others a certain lot of land, with a frame messuage thereon, adjoining the first described lot on the north side; the title to which last property is recorded as above, in Deed Book G. W. R., No. 22, page 235, &c.; and having moreover, in addition to all the purchase money of said lots, amounting to $2330, paid towards the erection and completion of a brick church on said premises, the sum of $2525;

Do hereby lease the same two lots, together with the said brick church, and all other buildings thereon, with the appurtenances of the same, unto the trustees of the Second Presbyterian Church in Southwark, and to their successors in office for ever, on the following conditions, viz., that the said trustees shall for ever hereafter pay me semi-annually, or to my heirs, executors, administrators or assigns, the sum of $145.65, lawful money of the United States, on the 6th day of November and on the 6th day of May, in the present and every future year, besides paying all and all manner of taxes and ground-rents, repairs and other charges, which may have accrued or shall hereafter accrue on said property; but if said trustees shall become indebted to me or my heirs or assigns for the amount of $291.30, and shall for three months after said sum has become due neglect to pay the same, then this instrument, after ten days' written notice left with the president or secretary of said trustees to this effect, and signed by me, my legal representative or assigns, shall become null and void.

I do moreover hereby empower and authorize said trustees to lease said property, or any part of the same, in any manner not inconsistent with the above conditions, for any term of time, and to demand, sue for, collect and receive all rents or other dues which have become due to me, or shall hereafter accrue from said property, so long as this lease shall be and continue in force.   In witness whereof I have hereunto set my hand and seal, this 21st day of July 1829.

E. S. Ely. [l. s.]

Signed, sealed and delivered in }
  presence of us,   }
  Mary Lippincott,
  Samuel M'Clellan.

[Kenrick v. Smick.]

N. B. Of the interest to become due on the 6th November next on the foregoing lease, $25.25 are to be deducted, and on account of a former lease merged in this, and moneys which have been paid since the 6th May last, the interest to be paid next November will be $120.40, and after that semi-annually $145.65.

E. S. ELY.

On the 1st January 1830 he placed the following memorandum at the foot of the last instrument, which, with its acknowledgment, was recorded on the 15th April 1836:

*Philadelphia, January* 1, 1830.

I hereby for myself, my heirs and assigns, engage with the trustees of the Second Presbyterian Church of Southwark, that if, on or before the 1st day of January 1836, they shall pay me or my said heirs the principal of the purchase money mentioned in the foregoing lease, together with all the rent and the expenses accruing on the said property, that I or my heirs shall and will then as soon as said payments have been made, give them a deed in fee-simple of the whole of the aforesaid leased property. Witness my hand and seal, the day of the date above written.

E. S. ELY. [L. S.]

R. WILLING, Jun.

*Philadelphia, ss.*

Before me, one of the aldermen of the city of Philadelphia, personally appeared the above-named Ezra Stiles Ely, and acknowledged the foregoing lease and the subjoined bond to be his free will, act and deed, and desired that the same might be recorded as such. Witness my hand and seal, the 21st day of June 1832.

R. WILLING, Jun., Alderman. [L. S.]

A large mass of parol and documentary evidence was given on the trial, and various subjects of contest arose and were subjects of charge by the court below; whether the plaintiff was a purchaser for a valuable consideration without notice, which the defendants contended he was not, because the instrument of the 21st July 1829 was recorded three days before the deed to the plaintiff, and the defendants were in possession of the building and premises at the time of the sale at auction to the plaintiff, which the plaintiff denied, and alleged the defendants had abandoned the property; whether the defendants were not estopped from setting up their title by having stood by and not given notice at the sale by public auction and advertisements. The plaintiff also alleged that the instrument of the 6th May 1828 was the only title the defendants had, and that not being recorded there was no notice; that if the instruments were conveyances, this instrument would not merge in the second instrument of 21st July 1829, and, not being recorded, had no operation against the plaintiff's deed. But the court charged that it was to be regarded, as Dr Ely

regarded it in his deposition, as having been merged in the paper of 21st July 1829. It was also contended by the defendants, and the court so charged, that the instrument of 21st July 1829 was the conveyance of a fee-simple subject to a ground-rent; that though notice was several times given by Dr Ely of arrears of ground-rent and of a forfeiture, yet that could not take place without a re-entry, which he did not make, or that he should at least have not left it equivocal whether he intended a forfeiture, nor have waived it by subsequent acts; and it was left to the jury to determine whether, independently of the legal construction of the instruments, the defendants had by their consent and acts (of which there was a great deal of evidence) admitted Dr Ely's right to sell to raise money to repay his advances, and consented to and encouraged his proceedings.

The case was argued at December term 1843 on these points by

*R. Hare* and *Haly* for the plaintiff in error, and *E. Spencer Miller*, contra. A reargument was directed by this court on the question whether the instrument of the 21st July 1829 was a conveyance, or only an executory agreement for a conveyance.

*R. Hare*, for the plaintiff in error, to show that it was an executory agreement, cited *Jackson* v. *Myers*, (3 *Johns.* 389); *Jackson* v. *Clark*, (*Ib.* 424); 1 *Lev.* 55; *Noy* 128; *Goodtitle* v. *Way*, (1 *T. R.* 735); *Doe* v. *Clare*, (2 *T. R.* 739); *Stouffer* v. *Coleman*, (1 *Yeates* 393); *Neave* v. *Jenkins*, (2 *Yeates* 107); *Sherman* v. *Dill*, (4 *Ib.* 295).

*E. Spencer Miller*, contra, contended it was a conveyance in fee on ground-rent with a clause of redemption, and referred to *Krider* v. *Lafferty*, (1 *Whart.* 302); *Jackson* v. *Kisselbrack*, (10 *Johns.* 336); 1 *Chit. Con.* 313; 1 *M. & Scott* 521; *Watson* v. *O'Hern*, (6 *Watts* 362); *Woodfall's Land. & Ten.*, where the cases are collected.

The opinion of the Court was delivered by

SERGEANT, J.—It has been settled in a variety of cases, that whether an informal instrument transferring an interest in real estate shall be construed a conveyance or only an agreement for a conveyance, must depend, not on any particular words or phrases that are found in it, but on the intention of the parties as collected from the instrument itself, and, where that is doubtful, from the circumstances attending it. Looking at this transaction in all its bearings, we are satisfied that the paper of 21st July 1829, which is the material one, can be construed in no other light than as an executory agreement. That it was so understood by Dr Ely, the concocter and maker of both the instruments, and the principal

[Kenrick v. Smick.]

party in the whole business, is manifest from his testimony. The evidence of some of the defendants' witnesses, as well as their conduct on various occasions, tend strongly to evince that they also so considered it, and that in their view the title remained in Dr Ely until they paid him the purchase money he had expended for the lots, and reimbursed his advances for building the church. But, independently of these, there is abundant in the language of the instruments themselves, and in the attendant circumstances, to show this. I speak now more particularly of the paper of the 21st July 1829; for I agree with the court below in the opinion that the first instrument was merged in the last. It must needs be so; for it embraced an additional lot, it imposed a larger rent, and added a material memorandum which was not in the first; and all this was done with the concurrence of the defendants, who adopted the new instrument and entered it of record, and it constitutes the title under which they claimed, inasmuch as they never recorded the first instrument, nor does it appear that they gave any notice of it. And if these instruments be, as the defendants contend, conveyances, the result would be that the first could not be merged in the last by what occurred; because a deed for land executed and delivered is not merged merely by the delivery of another deed between the same parties for the same land. The estate conveyed continues to be held under the first, and the premises here would be held by the defendants under a deed not recorded. The question therefore depends on the nature and character of the paper of the 21st July 1829; that of the 6th May 1828 being of no further effect than to exhibit the history of the transaction.

Now, this circumstance that the parties considered the last instrument as a merger of the first, as appears by the N. B. attached to it, tends strongly to show that the instruments were intended as agreements and not conveyances; for, as agreements, this substitution and merger set up by the defendants would be valid and effectual, but as conveyances they could not be. But there are other circumstances. The repeated use of the word "lease" shows it was not considered by the parties as a conveyance in fee-simple on ground-rent, but as something of an inferior kind, in the nature of an interest to endure for a period not precisely fixed, to be at some future time completed by the defendants paying off the principal sum, (which by the memorandum is fixed to be on or before the 1st January 1836), or forfeited in the meanwhile by suffering the rent to fall in arrear and notice. Articles of agreement are sometimes made for the sale of land, and the vendee is let into possession when there are still remaining various conditions to be performed on his part, and he is then in the nature of a tenant at will till the conditions are performed. So here, the defendants being let into possession, were considered

as having merely a lease, to be held subject to the performance of their stipulations, their existing right to terminate on non-compliance with them and due notice, or when changed into a fee by the payment of the purchase money in seven years. This is not only the evident construction given to the instrument by the parties, but it seems to be the only fair and reasonable one. The instruments were drawn by Dr Ely himself, who was unacquainted with legal forms and principles, and were adopted by the defendants without objection and without procuring more explicit and legal papers to be drafted by a lawyer or scrivener, as it undoubtedly would have been more prudent to do.

Then again, it is not easy to reconcile with the idea of a conveyance of the estate in fee-simple, the clause in the instrument giving to the trustees the power to lease the property in any manner not inconsistent with the conditions for any term of time, and to receive all rents that should accrue, which provision is contained in both instruments in the same words, and is obviously needless in a conveyance in fee-simple. The memorandum likewise shows that a further arrangement was looked to by the parties on or before the 1st January 1836, and that the present interest conveyed, termed a lease, was but temporary and provisional; that within such time the tenure would be changed, and Dr Ely would have his money returned to him, the Church taking the property off his hands, as appears to have been strongly and constantly expected and urged by Dr Ely.

Being then merely an executory agreement, the right of the defendants to hold the property must depend on their equity arising out of all the circumstances of the case; and the question is, whether a chancellor surveying the whole case would now decree them a conveyance under this agreement, and on what terms. The law seems to be, that on a lease for years with such a condition, if the condition be broken, the interest of the defendants would be *ipso facto* void by the breach, without any re-entry; and where the lease is made *ipso facto* void by the breach, then no subsequent recognition of the tenancy can set it up. *Pennant's Case*, (3 *Rep.* 64), and see the cases cited *Com. Ld. & Tenant*, 327, 330. In any event, the plaintiff having the legal title, and the defendants only an equity under articles, in order to defeat the plaintiff they must show that they are entitled now to call for a conveyance on settling an account and paying up all arrears of purchase money and interest or rents. They must show they have performed all that by the agreement they were bound to do, and were not guilty of acquiescence, delay or laches, and that they took such steps towards fulfilling their contract by relieving Dr Ely from his embarrassments, and in relation to his mortgage and sale, that in justice and equity they could now come into chancery and demand a conveyance.

[Kenrick v. Smick.]

As the case may be tried again, and on new principles, it would
not be proper to say anything more on the merits.

Judgment reversed, and *venire facias de novo* awarded.