## Bruner's Appeal.—Gray's Appeal.

1. An executor filed an account in 1861, showing a large balance against him; exceptions were filed, which were not finally disposed of until 1865. It was his duty to invest the balance, or ask the direction of the court during the litigation, and he was chargeable with interest.

2. The executor should have furnished the dates of other sums paid to him in order that the auditor might determine on his liability for interest.

3. The executor made a payment to a plaintiff, honestly and fairly, for the bonâ fide purpose of compromising a pending ejectment. *Held*, that credit for the payment was properly allowed.

4. Such payment was properly allowed under the circumstances, although it was a second ejectment, the first having been decided against the plaintiff by the Supreme Court.

5. The case being between executor and legatees, is to be decided upon a more liberal view of his discretion than as against creditors.

6. Gray *v.* Packer, 4 W. & S. 17, commented on.

January 31st and February 1st 1868. Before THOMPSON, C. J., READ, AGNEW and SHARSWOOD, JJ. Strong, J., at Nisi Prius.

Appeals from the decree of the Orphans' Court of *Northumberland county :* in the estate of William H. Gray, deceased. To October Term, 1867.

These appeals were taken from the decree of the court on the account of Peter W. Gray, executor, &c., of the decedent.

From the report of the auditor, William M. Rockafeller, Esq., the following facts appeared.

William Gray, the father of the decedent, and Francis Johnson, were the owners of a tract of land in Northumberland county ; the tract was sold for taxes to Joseph Wallace, and the time for redemption had passed. After the death of William Gray, Samuel T. Packer, Esq., then a practising lawyer, advised the decedent that the land could be recovered from Wallace. The decedent at first determined to commence suit for its recovery, but afterwards, upon consultation with others, fearing that he might be unsuccessful, and be involved in a large amount of costs, he declined proceeding in the suit.

He subsequently, however, entered into an agreement with Mr. Packer, by which he (Packer) was to conduct the suit on his own responsibility, bear all the expenses, and, if successful, receive as compensation one-sixth of the land.

An ejectment for the land was accordingly commenced to January Term 1832, by Johnson's representatives and the three children of Gray, the decedent being one.

Whilst the suit was pending, the decedent executed and delivered the following paper.

[Bruner's Appeal.]

"Johnson & Gray's heirs ⎱    Ejectment in the Common Pleas of
   *v.*    ⎰ Northumberland county for 440 acres
  Joseph Wallis.    ⎰ of land in Shamokin.

"In consideration of the professional services of Samuel J. Packer, I hereby grant, bargain and sell unto the said Packer, one-sixth part of the said tract, or so much thereof as may be recovered in this suit. It is understood, that if nothing be recovered, then Packer is to charge nothing for his services.

 "Witness my hand and seal, August 11th 1834.

      "WILLIAM M. GRAY.  [SEAL.]"

Mr. Packer spent much time and labor in preparing and conducting the suit, which was one requiring great professional skill and investigation. A verdict was rendered for the plaintiffs August 12th 1834. Mr. Packer died in the same year. The case was taken to the Supreme Court, and the judgment of the court below affirmed. Possession was delivered to William M. Gray under an habere facias. The agreement between Mr. Packer and Gray was duly proved April 1st 1835, and recorded the next day. After the death of Mr. Packer, in 1841, his heirs brought an ejectment to recover the one-sixth of the tract. They succeeded in the court below on the ground that the paper was an executory agreement to convey the land. The Supreme Court (Gray *v.* Packer, 4 W. & S. 17) decided that it was an executed conveyance and passed a life estate only to Mr. Packer, and reversed the judgment below.

William M. Gray in his lifetime conveyed his interest in the tract to Thomas Baumgardner and others, and took from them a mortgage for part of the purchase-money and afterwards died, having by his will, dated June 15th 1854, given one-half his estate to his son, Peter W. Gray, whom he appointed executor, and the other half to the children of his sister, Mary Bruner. After the death of S. J. Packer, his son, John B. Packer, continued to assert the claim of his father under the agreement, both to William M. Gray, and, after his death, to the accountant. He also redeemed the one-sixth of the land from sale for taxes. On the 23d of July 1860, Peter W. Gray agreed to compromise the one-half of the Packer claim for $1000, which he then paid, and took a deed from the Packer heirs to himself for the one undivided half of the one undivided sixth of the land.

On the 4th of March 1861, Peter W. Gray filed a partial account of his administration, charging himself with $1987.14, the amount of the inventory, and also other moneys received, amounting in the whole to $17,567.39; he claimed credits which made the balance against him $6754.23. The payment of $1000 to the Packer heirs was not amongst the credits; his account did not show the dates at which he received the moneys. Exceptions

were filed to this account April 2d 1861, and the matter was referred to J. K. Clement, Esq., as auditor, and no further proceedings were had in it for some time.

On the 28th of July 1860, the Packer heirs brought an action of ejectment against Baumgardner and others, owners of the Gray tract, to recover the balance of their father's claim.    To August Term 1860 the accountant had issued a scire facias against Baumgardner and others on the mortgage given to the decedent for the purchase-money of the land.    On the 22d of August 1860, the defendants in the scire facias filed the following affidavit of defence: "That in the deed of the plaintiff's testator, for the land for which the above mortgage was given, there was a covenant of warranty of the title therefor; that he has paid large sums of money upon the said mortgage, for which he holds the receipt of the plaintiff; that an action of ejectment has been brought in the Court of Common Pleas of Northumberland county by John B. Packer, &c., for the recovery of the possession of an undivided twelfth part of the land described in the mortgage given by the defendants above named, which suit is still pending, and if a recovery should be had of the land claimed in said ejectment, the said plaintiff will not be entitled to claim a further payment upon the above-stated mortgage."

On the 20th of November 1863, Baumgardner tendered to the accountant $4510.33 in payment of the balance due on the mortgage, "and demanded the title to said mortgaged land to be perfected by removing the action of ejectment in the Common Pleas of Northumberland county, instituted by the heirs of Samuel J. Packer, deceased, against Thomas Baumgardner and others, for the recovery of a portion of said lands bound by said mortgage."

On the same day, the ejectment of the Packer heirs was compromised by the payment of $1000 by Peter W. Gray as executor, &c., of W. M. Gray, deceased, to John B. Packer as attorney for the plaintiffs in the ejectment.

On the 12th of August 1864, the accountant was cited to settle an account.    To this he answered, setting forth that the exceptions to his account of 1861 were still pending before the auditor. On the 15th of November 1864, the account and exceptions were referred to another auditor, who made report which was confirmed absolutely June 6th 1865.

The executor filed a second account October 7th 1865, in which he charged himself with the balance on his former account, with the balance due on Baumgardner's bond, $6972.74, but charging himself with no interest, and giving no dates of the receipts.    Exceptions were filed November 13th 1866, and with the account were referred to Mr. Rockafeller, as auditor.    The 1st exception appears to have been that the accountant had not charged himself with interest on the balance of his first account and on the

sum of $6942.76 which he had received from Baumgardner. In relation to this exception the auditor reported :—

"The dates when the accountant received the money, and the times of the several payments of part of the legacies to the legatees, were not furnished to your auditor, and the fact that his account was pending before an auditor on exceptions filed from April 2d 1861 to January 6th 1865, renders it impossible for your auditor to decide that the accountant should pay any interest. He therefore decides that the 1st exception is not sustained."

The 3d exception was to the two payments of $1000 each made to John B. Packer, Esq. This exception the auditor overruled, and allowed the account credit for both sums.

The other legatees excepted to the report,—that the auditor had not charged the accountant with interest on the balance of his first account, and on the payments made by Baumgardner in discharge of his mortgage; and that he had allowed credit for the two payments of $1000 each to J. B. Packer.

The Orphans' Court disallowed credit for the payment made to Mr. Packer July 23d 1860, and after deducting $1000, the amount of that payment, dismissed the other exceptions and confirmed the report.

Judge Jordan, in delivering the opinion of the court, said :—

* * * " That there are cases in which an executor or administrator may compromise a dispute has already been shown, especially when the compromise does not affect creditors, but legatees. Was this such a case? There are no creditors to be affected. The devisees of William M. Gray make the objection to the credits of $1000 each, paid John B. Packer, Esq. The tract of land, at the time it was sold to Longnecker, Baumgardner and Helfenstein, was a valuable one, and although the heirs of Samuel J. Packer were unsuccessful in the first ejectment brought by them, the ruling of the Supreme Court, it was supposed, was shaken in the opinions given in the following cases : Kenrick v. Smick, 7 W. & S. 41; Defraunce v. Brooks, 8 Id. 67; McFarson's Appeal, 1 Jones 503–511; Williams v. Bentley, 3 Casey 294; Ogden v. Brown, 9 Id. 247; Stewart's Administrator v. Lang et al., 1 Wright 201. The principles established in these cases furnished at least a reasonable ground for supposing that on a second trial the result might be different, taking into consideration the instrument itself—the intention of the parties at the time, gathered from the object for which it was given and received, the services performed and to be performed, the character and value of the land at that time, unseated and unproductive but by the expenditure of large sums of money. The life estate in one-sixth was of little value, and it can hardly be supposed that Mr. Packer would give his pro-

7 P. F. SMITH—4

fessional services, expend his time and money in preparing the cause for trial, for a compensation of such uncertain value as a life estate. But besides the opinions expressed in the cases referred to, the mortgagors, Baumgardner, Longnecker and Helfenstein, made defence to the payment of any more of the purchase-money until the ejectment brought by the heirs of Mr. Packer was settled so as to relieve them. That the defence set up by the mortgagors would have been successful until a favorable termination of the ejectment in favor of Gray's heirs can hardly be questioned; and if the heirs of Gray had been defeated, this would, in all probability, have formed a complete legal ground for refusing payment of the mortgage-money claimed.

"What the decision of the Supreme Court would have been had the question again been presented to them, what interest had Samuel J. Packer in the one-sixth of the tract granted and sold to him by William M. Gray, we do not know, and it is not necessary this court should express an opinion. What would a prudent man do under all the circumstances? It seems to this court that the compromise was one which it was proper to make. The deed from the heirs of Samuel J. Packer to Peter W. Gray for the half of the undivided one-sixth of the Robert Gray tract was made in July 1860, to him absolutely and not to himself for his interest and in trust for the other devisees, and the $1000 paid by him when this arrangement was effected, was not claimed as a credit in his account filed on the 4th of March 1861. That account was confirmed absolutely.

"In the 2d account filed on the 7th of October 1865, to which exceptions have been filed, he claims credit for the $2000 paid to Mr. Packer; $1000 on the 28th of July 1860, the other, November 1863, and charges himself with the balance remaining in his hands on the 1st account, $6759.73, and also with the balance collected from Thomas Baumgardner since that account was filed, $6972.79. There is nothing in the evidence reported by the auditor to show that, when in July 1860, Peter W. Gray agreed to pay the heirs of Mr. Packer $1000 on receiving a deed to himself for the one-half of the tract, he was acting as executor, and for the benefit of the devisees generally. The arrangement appears to have been made for himself, and this court think that for the $1000 then paid he is not entitled to a credit, even if the fact of not including it in his 1st account, which was confirmed absolutely, would not bar him. It is clear, if the credit had been claimed and the account suffered to be confirmed absolutely, it could not have been opened.

"As to the payment of $1000 on the 20th of November 1863, that appears to have been made as executor, and for the benefit of those entitled to the balance in his hands, and the balance of

unpaid purchase-money in the hands of the mortgagors. For this sum we think the executor is entitled to a credit."

Both parties appealed.

The legatees, Charles J. Bruner and Harriet S. Totten, assigned for error that the court did not charge the accountant with interest as claimed in their exceptions to the auditor's report, and allowed the accountant credit for the sum of $1000, paid Mr. Packer November 20th 1863.

The accountant assigned for error that the court did not allow him credit for the sum of $1000 paid Mr. Packer July 23d 1860.

*J. W. Comley,* for Bruner and Totten, cited Rittenhouse *v.* Levering, 6 W. & S. 200; Withers' Appeal, 4 Harris 151; Fox *v.* Wilcox, 1 Binn. 194; Light's Appeal, 12 Harris 180; English *v.* Harvey, 2 Rawle 309; Brinton's Estate, 10 Barr 408; Mayberry's Appeal, 9 Casey 258; Flintham's Appeal, 11 S. & R. 16; and Yundt's Appeal, 1 Harris 575; Dietterich *v.* Heft, 5 Barr 87; McElhenny's Appeal, 10 Wright 347; Yoder's Appeal, 9 Id. 397; Heyer's Appeal, 10 Casey 183; Keech *v.* Rinehart, 10 Barr 242; Gray *v.* Packer, 4 W. & S. 17; Kenrick *v.* Smick, 7 W. & S. 41; Defraunce *v.* Brooks, 8 Id. 67; McFarson's Appeal, 1 Jones 503–511; Williams *v.* Bentley, 3 Casey 294; Ogden *v.* Brown, 9 Id. 247; Stewart *v.* Lang, 1 Wright 201; Garver *v.* McNulty, 3 Id. 473; Bortz *v.* Bortz, 12 Id. 382.

*S. P. Wolverton,* for the accountant, cited Billington's Appeal, 3 Rawle 57; Dillebaugh's Estate, 4 Watts 179; McNair's Appeal, 4 Rawle 148; Gray *v.* Packer, 4 W. & S. 17; Thompson *v.* McKinley, 11 Wright 353; Lehigh Coal and Navigation Co. *v.* Harlan, 3 Casey 439; Kenrick *v.* Smick, 7 W. & S. 45; Defraunce *v.* Brooks, 8 Id. 68; McFarson's Appeal, 1 Jones 511; Williams *v.* Bentley, 3 Casey 300; Ogden *v.* Brown, 9 Id. 247; Stewart *v.* Lang, 1 Wright 201.

The opinion of the court was delivered, February 20th 1868, by

AGNEW, J.—These appeals arise out of the same account and decree, and will therefore be considered together. We think the auditor, who was followed by the court in this respect, erred in not making any charge of interest against Gray, the executor. The balance of the first account clearly bore interest from the time of its final confirmation: Withers's Appeal, 4 Harris 151. Nor was the executor exempt from interest for the whole time from the filing of the account on the 4th of March 1861, until the 6th of January 1865, the date of the confirmation. It is true that the settlement and final confirmation of the account was prevented by the filing of exceptions and reference of the case to an

[Bruner's Appeal.]

auditor. But it by no means follows that an executor may suffer so large a balance as $6754 to lie in his hands totally unproductive for five years: Yundt's Appeal, 1 Harris 575. It was his duty to invest it, or at least to have prayed the direction of the Orphans' Court upon the subject while the litigation was pending. Besides, it seems to be very manifest that the suspension of the proceedings was not owing to active litigation during all this long interval. The proceeding before the auditor seems to have slept awhile, then to have been resumed, and finally to have gone into the hands of another auditor. It was the duty of the auditor on the final account to have investigated the facts, and to have charged the executor with interest for so much of the time as the circumstances would warrant. It was the duty of the executor also to have furnished the dates of the receipts of the sums paid to him by Baumgardner and others. They amount to over $7000, and were received after the first account was filed. It will not do for an executor or administrator to charge himself with such receipts, and to avoid interest by omitting to furnish the dates. This is not such a transaction as the maxim *de minimis* would apply to. The error must be corrected by remanding the report to the same or another auditor to inquire into the facts, and make such charge of interest as the circumstances will warrant.

We think the court below disposed of the payments made by the executor to the heirs of Samuel J. Packer, deceased, correctly, under the circumstances. The first payment of $1000, made July 23d 1860, to John B. Packer, Esq., was properly rejected. It is very evident that Gray, the executor, who was also devisee of one-half of the estate which was the subject of compromise with the heirs of Samuel J. Packer, made the arrangement for the one-half of the Packer claim upon this property on his own account as devisee and legatee, and not as executor for the benefit of all the parties in interest. He took a deed from the Packers to himself individually for one-half of their interest, and without any reference whatever to his co-legatees or his own office as executor. This was done, and the money paid before he settled his first account, and he claimed no credit in that account on the money thus paid. It was not until 1866, when he came to settle his final account, that he concluded to claim credit for the payment six years before. It is now too late to change the manifest character of the transaction, and ask to charge this sum against his co-legatees, as its effect would be.

And we think the court was right in allowing him a credit for the second sum of $1000 paid Mr. Packer to compromise the remaining interest. All the facts reported by the auditor show that the payment was honestly and fairly made in the exercise of a judicious discretion for the bonâ fide purpose of compromising an ejectment brought by the heirs of Samuel J. Packer for a part of

the land sold by the testator to Baumgardner, which, if successful, would have been a good defence by Baumgardner to the payment of a proportional part of the debt in the mortgage given for the purchase-money. The only plausible objection made to this is that urged before us that the Packer claim had been decided by this court, and therefore was so unfounded, it should have been disregarded by the executor. It is true it was decided in Gray v. Packer, 4 W. & S. 17, that the writing under which Samuel J. Packer claimed was an executed conveyance, and passed but a life estate, which had ended by the death of Mr. Packer. But this did not end controversy, the heirs of Mr. Packer having the power to bring another ejectment, and prosecute it to verdict and judgment, and to take the opinion of this court upon the writing a second time.

In the report of Gray v. Packer it appears that the opinion of the court was founded wholly upon the paper itself, no surrounding or supplementary circumstances being given. The paper on its face is by no means free from all doubt, yet if the case had again appeared here precisely in the same attitude, this court, governed by the rule of *stare decisis*, would have pronounced the same opinion. But it was impossible for the executor to say that the case would come up in the same shape. It might have assumed a very different aspect, as he was justified by the subsequent decisions of this court in believing. It was only two years after the case of Gray v. Packer, the same judge, in Kenrick v. Smick, 7 W. & S. 41, said that the character of the instrument, whether executed or executory, must depend not on any particular words or phrases that are found in it, but on the intention of the parties as collected from the instrument itself, and where that is doubtful from the circumstances attending. After this came the cases of Williams v. Bentley, 3 Casey 294, Ogden v. Brown, 9 Id. 247, and Stewart v. Long, 1 Wright 201, in which words of present grant and conveyance were controlled by the supposed intention drawn from the nature of the acts to be done by the vendee, and the writings pronounced to be executory only. Looking at the writing between Gray and Packer in the light of these decisions, and adverting to the fact that it was given upon a proceeding not yet terminated for professional services to be rendered as well as rendered, that the subject of the grant was wholly uncertain, depending upon the result of the verdict, whether anything, and how much, would be recovered, it certainly was a matter calculated to cause a prudent man to doubt, and doubting to prefer a fair compromise to the uncertain result of litigation, with its attending expenses. This is a case between the executor and the legatees, and therefore to be decided upon a more liberal view of his discretion than as against creditors: McNair's Appeal, 4 Rawle 148.

54 SUPREME COURT [*Sunbury*

[Bruner's Appeal.]

Upon all the circumstances, we think the court was right in allowing the credit for the second sum of $1000 paid Mr. Packer.

The decree of the Orphans' Court is reversed as to the refusal to charge the executor, Peter W. Gray, with interest, and the report of the auditor is ordered to be remanded to him, or to another to be appointed in his place, for the purpose of inquiring into and charging the said executor with so much interest upon the moneys in his hands before the final settlement of his account as the facts shall apper to him to warrant. The residue of the decree is affirmed, and Peter W. Gray is ordered to pay the costs of these appeals.