Statement of Facts.

# J. A. WILLS v. MANUFACTURERS N. GAS CO.

APPEAL BY PLAINTIFF FROM THE COURT OF COMMON PLEAS
OF WASHINGTON COUNTY.

Argued October 23, 1889—Decided November 12, 1889.

[To be reported.]

1. An agreement in an oil lease, that, upon failure to drill a well within a specified time, the lessee shall pay to the lessor " the sum of $1,000 annually in advance thereafter, payable quarterly, until the well is completed," means that payment is to be made quarterly in advance, until such completion, at the rate of $1,000 per year; such quarterly payments accrue separately and become an existing indebtedness only at the beginning of the respective quarters for which they are to be paid.

2. A provision in such a lease that a failure by the lessee to perform any of his covenants shall work an absolute forfeiture, and the lease shall thereupon become null and void, being intended for the protection of the lessor, he has the option either to declare the forfeiture or to affirm the continuance of the contract, and if he does not choose to avail himself of the forfeiture, it cannot be set up by the lessee as a defence to an action upon the lease: Galey v. Kellerman, 123 Pa. 491, followed.

3. Persons may contract in such a form as to authorize a party to take advantage of a forfeiture incurred by his own default; but a proviso to the effect that a forfeiture shall not prevent the collection of any sums due to the lessor immediately before it takes place, is not sufficient to manifest an intention that the lessee may defend against a suit for rentals on the ground that, before they accrued, the lease was forfeited by default in the payment of prior instalments.

Before STERRETT, GREEN, CLARK, McCOLLUM and MITCHELL, JJ.

No. 241 October Term 1889, Sup. Ct.; court below, No. 80 August Term 1888, C. P.

On June 5, 1888, John A. Wills brought assumpsit against the Manufacturers Natural Gas Company, to recover rentals alleged to be due from the defendant to the plaintiff upon an oil- and gas-lease, filing the following statement of claim:

" On January 18, 1887, the plaintiff and defendant entered into and signed a contract in writing, a true copy of which, appended hereto, is made part of this statement. By the terms thereof the defendant undertook to develop the plaintiff's land,

therein described, for oil and gas purposes, and on its failure to drill a well thereon to completion, on or before September 1, 1887, it would pay the plaintiff one thousand dollars annually in advance, from the last named date, payable quarterly at the First National Bank of Washington, Pa., until said well should be completed. The defendant has not begun to drill a well on said land. It has paid the first two quarterly instalments of the first years' payment, that is to say, the $250, payable September 1, 1887, for the quarter ending November 30, 1887, and the $250, payable December 1, 1887, for the quarter ending February 28, 1888, but has paid no other quarterly instalments or part thereof.

" The plaintiff brings this suit to recover the third and fourth quarterly instalments of the first year's payment of $1,000; that is to say, $250, due March 1, 1888, with interest thereon since the last named date, and $250, the fourth quarterly instalment, due June 1, 1888, all of which is due and unpaid."

The statement of claim was verified by the affidavit of the plaintiff's agent, and to it was appended a copy of the contract sued on, executed by John A. Wills, as party of the first part, and by the Manufacturers Natural Gas Company, as party of the second part, its material portions being as follows :

" The said party of the first part in consideration of the sum of one dollar to him in hand paid, the receipt whereof is hereby acknowledged, and in further consideration of the stipulations, rents and covenants hereinafter contained, on the part of the said party of the second part, its successors and assigns, to be kept and performed, has granted, demised and let unto the said party of the second part, its successors and assigns, for the sole and only purpose of mining and excavating for petroleum, carbon oil or gas, and for the laying of pipe under said surface for the transportation of oil or gas produced on the premises herein leased only ; ALL that certain tract of land . . . . . TO HAVE AND TO HOLD the said premises for the said purposes only or either of them, unto the said party of the second part, its successors and assigns, for, during and until the full term of twenty years next ensuing the day and year above written, or as long as oil or gas shall be found in paying quantities on said described land within the said period of twenty years. IN CONSIDERATION WHEREOF, the said party of the second part, its

successors and assigns, covenants and agrees as follows, namely;

" That within ninety days from the date hereof it will commence to drill one well upon the land herein leased and will prosecute the drilling of said well actively, diligently and continuously, and complete the same on or before the First of September 1887, and upon the failure to do so within the time herein specified, to pay the party of the first part the sum of one thousand dollars annually in advance, after the last named date, payable quarterly at the First National Bank of Washington, Pa., until the said well is completed ; . . . . .

" And it is further understood and agreed that upon the failure by the party of the second part, its successors and assigns, to keep and perform all the covenants herein contained, such failure to perform or breach of the said covenants shall work an absolute forfeiture of this grant or lease, and the privileges or easements hereby given shall absolutely cease, determine and become null and void: Provided, however, that no such forfeiture shall in any way interfere with or prevent the collection of any and all sums of money due the said party of the first part, his heirs and assigns, under this lease, at and immediately before such forfeiture."

The defendant, having been served with a copy of the plaintiff's statement of claim, filed an affidavit of defence, averring as follows:

" By the lease mentioned in the plaintiff's statement it is provided that a failure to keep and perform all the covenants of said lease shall work an absolute forfeiture of said lease, and that the privileges or easements thereby granted shall absolutely cease, determine and become null and void. The payment of $250, for the quarter ending February 28, 1888, payable December 1, 1887, which is mentioned in the plaintiff's statement, was not paid to the plaintiff on the said 1st day of December 1887, nor till long thereafter, and was collected from the defendant by suit; it having also been provided in said lease that no such forfeiture as is above referred to should in any way interfere with the collection of any and all sums of money due the plaintiff at and immediately before such forfeiture. The said defendant, prior to the 1st day of March, 1888, forfeited, abandoned and surrendered the said lease; and, since long before the date last aforesaid, has not been in the possession or

occupancy of said leasehold, or claiming to hold the same, but on the contrary notified the said plaintiff, prior to March 1, 1888, that it had abandoned said lease. The affiant is advised and believes that the aforesaid failure to pay the $250 above mentioned upon the first day of December, 1887, and until collection thereof from the defendant by suit, and the said abandonment of the lease aforesaid, worked an absolute forfeiture of the said lease and put an end to the contract relation between the plaintiff and the defendant, prior to the 1st day of March 1888, and that the moneys for which this suit is brought never accrued or became due from the defendant to the plaintiff."

A rule for judgment for want of a sufficient affidavit of defence was disposed of, after argument, by the following opinion and decree, McILVAINE, P. J.:

The only question now before us, is' the sufficiency of the defendant's affidavit of defence. Granting the truth of every averment therein contained, is the plaintiff entitled to judgment? The affidavit alleges that the payment of $250 due December 1, 1887, was not voluntarily paid when due, but was collected after that date by an action at law ; that prior to March 1, 1888, the defendant company " forfeited, abandoned and surrendered the said lease; and, since long before the date aforesaid, has not been in the possession or occupancy of said leasehold or claiming to hold the same, but on the contrary notified the said plaintiff prior to March 1, 1888, that it had abandoned said lease." By the terms of the lease, the failure to pay the $250 rental (for the quarter ending March 1, 1888) on December 1, 1887, rendered the lease null and void, and the only right of action remaining in the lessor was for the collection of the rent due and payable when the lease by the force of its own terms and conditions terminated. The language of the lease is, " a failure to perform or a breach of the said covenants shall work an absolute forfeiture of this grant or lease, and the privileges or easements hereby given shall absolutely cease, determine and become null and void." There was a breach on December 1, 1887, and at that date the lease " absolutely ceased, determined and became null and void." The defendant company has paid and there has been collected from them, all rent " due " and payable at and immediately before such

breach, and they abandoned and surrendered the lease and have not been in possession of the leasehold since they forfeited their rights and interest therein. Taking these facts as true, as we must in considering the sufficiency of the affidavit of defence, we think the defence is good and the rule for judgment must be discharged.

And now January 21, 1889, rule for judgment for want of a sufficient affidavit of defence is discharged.

Thereupon the plaintiff took this appeal specifying that the court erred: 1. In making the decree discharging the rule for judgment; and 2. In not entering judgment for the plaintiff.

*Mr. John Aiken* (with him *Mr. T. J. Duncan*), for the appellant:

1. A forfeiture clause, intended as a spur to incite a lessee to do his duty, will not be allowed to operate in his favor, where, against the lessor's wish, he deliberately made default for the purpose of working the forfeiture which he sets up: Galey v. Kellerman, 123 Pa. 491; Clark v. Jones, 1 Den. 516 (43 Am. Dec. 706); Cartwright v. Gardner, 5 Cush. 273; Doe v. Bancks, 4 B. & A. 401. None of the decisions in this state go against this doctrine. Kenrick v. Smick, 7 W. & S. 41, and Sheaffer v. Sheaffer, 37 Pa. 525, only decide that re-entry by the lessor is not required to complete the forfeiture, and both are cases where the forfeiture was set up by the lessor and those claiming under him, while in the latter case it is intimated that it may be waived by the lessor. The forfeiture clause is for the benefit of the lessor and to be enforced for his benefit: Brown v. Vandergrift, 80 Pa. 142; Munroe v. Armstrong, 96 Pa. 307.

2. The proviso in the lease, that no forfeiture shall prevent the collection of any sum due at the time a forfeiture is incurred, may be claimed to be against the plaintiff, but we take it that the proviso was intended to operate only when a forfeiture is declared by the lessor. Moreover, no forfeiture having occurred before the time fixed for the completion of the first well, the plaintiff is entitled to judgment under the proviso we have referred to, even if a forfeiture did afterwards occur. Upon failure to complete the well within the specified

time, the lessee, by the terms of the lease, became liable to pay the whole of the first year's rent, the third and fourth quarters of which are embraced in this action. The whole year's rent at once became debitum in præsenti, though solvendum in futuro, in instalments. Whether the stipulation in the lease be regarded as a penalty, as a condition precedent, or as a continuous and continuing contract, is immaterial, for in either aspect the obligation to pay $1,000 in quarterly instalments, became fixed beyond recall by the lessee's default.

*Mr. M. C. Acheson,* for the appellee:

1. The covenant in this lease providing for a forfeiture is mutual. It contemplates an absolute ending and termination of the lease. It provides that " it is understood and agreed " that a breach shall work an " absolute forfeiture " and the easement shall then " absolutely cease, determine and become null and void." It is not left optional with the lessor to declare the forfeiture. That is to be absolute, though it is not to prevent the collection of all rentals to that date. This construction leaves the lessor free to lease to somebody else, and compensates him for the time the lease was held. Any other might require a lessee to operate worthless territory, or, as an alternative, pay rental, at the option of the lessor, until the end of the term specified in the lease. This would be inconsistent with and contradictory of the express provision for collection of the rental due at the time of forfeiture.

2. In Galey v. Kellerman, 123 Pa. 492, the forfeiture clause is not like the one in the present case, and the suit was only for rental due at the time of the forfeiture. The decision, therefore, is not applicable as an authority. None of the other cases cited for the plaintiff can affect this case. It is sui generis. The claim that rent for the entire year accrued at the time of the failure to complete the well, is not supported by the language of the lease. It does not say that the $1,000 shall be paid annually in advance, but before the sentence is complete provides for its payment quarterly. The defendant could not owe any of the money here sued for at the time of the forfeiture, nor for three months thereafter. " Due " and " owing " are synonymous terms : Roberts v. Beatty, 2 P. & W. 67. These moneys, not being due, were not within the proviso

to the forfeiture clause. In Galey v. Kellerman, supra, the rental was payable in a gross sum for the year, but the judgment only covered the time up to the forfeiture.

OPINION, MR. JUSTICE CLARK:

This action was brought upon the covenants contained in a certain lease, dated January 18, 1887, by John A. Wills to the Manufacturers Natural Gas Company, of a certain tract of land in Washington county, containing 228 acres, for the sole and only purpose of mining and excavating for gas and oil, and for the removal of the same. The term of the lease was twenty years, or as long as oil or gas should be found on the premises in paying quantities within that period.

In consideration of this lease, the lessee agreed to commence operations upon one well within ninety days, and to prosecute the work " actively, diligently and continuously," and to complete the same on or before the first day of September, 1887 ; " and upon failure to do so within the time herein specified, to pay the party of the first part the sum of $1,000 annually in advance after the last named date, payable quarterly, at the First National Bank of Washington, Pa., until the said well is completed; " that is to say, as we construe the contract, at the rate of $1,000 per year, payable in advance quarterly until the well is completed. Upon a careful reading and consideration of the terms of the contract, we do not think the parties contemplated that upon failure of the lessee to complete the well on the first day of September, 1887, the sum of $1,000 was immediately thereafter owing to the lessor, payable, etc., but rather that the $1,000 annually in advance was payable quarterly until the said well was completed, at which time such quarterly payments were to cease.

It is conceded, however, that the defendant did not, within ninety days, or at any other time prior to the bringing of this suit, commence operations or make any effort whatsoever to complete the first well, or indeed in any way or to any extent develop the territory, either for oil or natural gas. On the first day of September, 1887, when the period of default began, the defendant voluntarily paid the first quarterly payment of $250 in advance, according to the agreement. Failing to pay the second instalment due on the first day of December, 1887,

suit was brought and judgment obtained therefor; after judgment this instalment was also paid.   The present suit is brought to recover the third and fourth quarterly instalments, payable March 1, 1888, and June 1, 1888, respectively.

By way of defence, the defendant invokes the benefit of certain clauses of the contract, which are as follows :

"And it is further understood and agreed that upon the failure by the party of the second part, its successors and assigns, to keep and perform all the covenants herein contained, such failure to perform, or breach of the said covenants, shall work an absolute forfeiture of this grant or lease, and the privileges or easements hereby given shall absolutely cease, determine and become null and void: Provided, however, that no such forfeiture shall in any way interfere with or prevent the collection of any and all sums of money due the said party of the first part, his heirs and assigns, under this lease, at and immediately before such forfeiture."

The company's contention is, that its own failure either to commence operations to put down the first well or to pay the $250 on December 1, 1887, was such a failure on its part to keep and perform its covenants as worked a forfeiture of the lease; and that, although it was obliged to pay the $250 sued for, which was the amount due "at and immediately before such forfeiture," there was no legal obligation remaining to make any further payments; that the lease was by this means forfeited and surrendered, the possession abandoned, and all claim relinquished, of which the plaintiff had notice before this suit was brought; in the language of the affidavit of defence : "That the aforesaid failure to pay the $250 above mentioned upon the first day of December, 1887, and until collection thereof from the defendant by suit, and the said abandonment of the lease aforesaid, worked an absolute forfeiture of the said lease, and put an end to the contract existing between the plaintiff and the defendant prior to the first day of March, 1888, and that the moneys for which this suit is brought never accrued or became due from the defendant to the plaintiff."

It is very plain that this clause of the contract was inserted in the interest and for the exclusive benefit of the lessor whose purpose it was to have his lands developed for oil or gas.   With this purpose in view he bound the defendant to commence the

first well within a specified time, to prosecute the work actively and continuously to completion, and, failing in this, to pay him $1,000 a year until a well was completed.  This was manifestly intended to be applied as a spur to the operator and to compel the development which was the object of the lease.  Anticipating, however, that the defendant might not only fail to put down a well, but through insolvency or otherwise, might become unable to pay the money, the plaintiff provided in the contract, upon the failure of the company to keep their covenants, for a forfeiture of the lease, which would enable him in that event to put an end to the lessee's pretensions, and give him an opportunity to seek other means of development.  It was certainly not in contemplation of the parties that the defendant might set up its own default as a cause for cancellation; if this is so, this contract, drawn with exceptional care for the protection of the lessor, is a mere rope of sand; its obligations could only "keep the word of promise to the ear to break it to the hope."  It was the duty of the lessee to develop the territory by putting down a test well according to the stipulations of its contract; failing to do so, and failing also to pay the money as agreed upon, the plaintiff had an undoubted right to declare a forfeiture, but the lessee had no such right.

But, although the lessor had this right, he was not, we think, under the present state of the law, bound to exercise it.  The clause of forfeiture having been inserted wholly in his interest and for his protection, it was competent for him to dispense with its provisions and to affirm the continuance of the contract. His right was optional or elective; and when default was made by the defendant on both alternatives, the plaintiff might either forfeit the contract or affirm its continuance, as he chose.  The English authorities recognize the rule that "even in the case of a lease for years, when the direction is that it shall become void on breach of the condition, it will only be void at the option of the lessor; the lessee shall not take advantage of his own wrongful performance of the contract in order to destroy the lease, which had perhaps turned out a disadvantageous one:" 1 Smith's L. C., 89, citing Doe v. Bancks, 4 B. & A. 401; Rede v. Farr, 6 M. & S. 121; Arnsby v. Woodward, 6 B. & C. 519, and other cases.

In Doe v. Bancks, 4 B. & A. 401, the lease was for mining

purposes, and contained a proviso in substance as follows : " Provided also, and it is mutually agreed, etc., that the aforesaid works shall commence and begin within one year from the date hereof, and if the same shall stop or cease working at any time for two years, this lease shall be deemed void to all intents and purposes." BEST, J., said : " In construing this clause of the lease we must look to the object the parties had in view. The rent was to depend upon the number of tons of coal raised. In order to derive any benefit from the mine, it was the object of the landlord, by introducing this clause, to compel the tenant to work it. The clause therefore was introduced solely for the benefit of the landlord, to enable him in case of a cesser to work to take the possession of the mines, and either to work them himself or let them to some other tenant. That, therefore, being the object of the parties in introducing the clause, I think it will be fully answered by holding the lease to be void at the option of the landlord. Besides, I take it to be a universal principle of law and justice that no man can take advantage of his own wrong."

A distinction formerly prevailed between a proviso declaring that the lease should be void on a specified event, and a proviso enabling the lessor to determine it by re-entry. It was held that in the former case the lease became absolutely void on the event named, and was incapable of being restored by acceptance of rent or other act of intended confirmation ; whilst in the latter, some act, such as entry or claim, must have been performed by the lessor, to manifest his intention to end the demise, which was voidable in the interval and consequently confirmable. The force of this distinction, it is said, in Taylor on L. & T., § 492, has been almost, if not quite, abated by the modern decisions, which establish that the effect of a condition making a lease void, upon a certain event, is to make it void at the option of the lessor only, in cases where the condition is intended for his benefit, and he actually avails himself of his privilege. To the same effect is 2 Platt on Leases, 327. But it is entirely optional with the lessor whether he will avail himself of this right or not, although by the terms of the proviso the term is to cease or become void for the non-performance of the covenant ; and if the lessor does not avail himself of it the term will continue, for the lessee cannot elect that it shall cease or be void: Tay-

lor on L. & T., supra. Where there is a proviso in a lease that on non-payment of rent the term shall cease, the lessor and not the lessee has the option of determining the lease upon a breach made : Reid v. Parsons, 2 Chit. 247.

The English law in this respect has been generally followed in this country, and such a lease is held to be good until avoided; though the lessee is estopped to set it up against the lessor. A lessee cannot avail himself of his own act to vacate a lease, on the principle that no man shall be permitted to take advantage of his own wrong : Wood's L. & T., 1204. So, Mr. Parsons in his Law of Contracts, vol. 1, page 507, referring to the distinction formerly recognized between the effect of a proviso declaring that the lease shall be void on a specified event, and a proviso enabling the lessor to determine it by re-entry, says : " This distinction is now exploded, and it is held that the lease is voidable only at the election of the lessor, but not of the lessee, though the proviso expressly declare that it shall be void." To the same effect are the cases of Clark v. Jones, 1 Den. 516, and Phillips v. Chisson, 12 Ire. 194, and many others that might be referred to.

In Pennsylvania the older doctrine would seem at first to have been adhered to, that in a lease for years with condition, if the condition be broken by the lessee, his interest was ipso facto void by the breach, and no subsequent recognition of the tenancy could set it up : Kenrick v. Smick, 7 W. & S. 41. In the case cited, there was a lease of land upon condition that the rent should be paid upon certain specified dates, and if a certain default was made for three months, neglect to pay after ten days' notice should render the lease null and void. The default occurred, and notice was given, and it was held that after ten days the lease was ipso facto void, without re-entry, and could not afterwards be affirmed, or continued. In Sheaffer v. Sheaffer, 37 Pa. 525, the doctrine announced by Justice SERGEANT, in Kenrick v. Smick, supra, was adhered to ; the English cases were brought into contrast with the doctrine of Kenrick v. Smick, and it is admitted that the rule of the English courts is followed in most of the states of the Union. In Davis v. Moss, 38 Pa. 346, the rule of the previous cases is again apparently recognized, but its rigor is relaxed in this, that the forfeiture is said to depend upon the terms of the in-

strument, " unless there be evidence to affect the landlord with a waiver of the breach, like the receipt of rent or other equally unequivocal act."

The distinction between the Pennsylvania cases referred to and the weight of authority elsewhere, therefore, would seem to be that by the former the lease, upon breach of the condition, is ipso facto void, unless by some unequivocal act of the lessor it is waived, whilst by the latter it is void if the lessor elects by some positive act to take advantage of it. We do not understand that in either case a re-entry is required to complete the forfeiture. This almost amounts to a distinction without a difference. In practice, the prima facies being different, it merely shifts the burden of proof from one party to the other.

It will be observed, moreover, that the Pennsylvania cases already referred to are all cases in which the forfeiture was set up by the lessor upon the default of the lessee; in none of them did the lessee set up his own default as a cause of forfeiture. No case has been called to our attention, in this or any other state, in England or elsewhere, which recognizes the doctrine that a party may take advantage of his own wrong, or set up his own default to work a forfeiture of his own contract. Persons may, of course, contract in this form and to this effect, if they choose, but we do not understand the parties to this contract to have so intended.

But the rigid rule of Kenrick v. Smick, supra, is further relaxed, in the very recent case of Galey v. Kellerman, 123 Pa. 491. In that case the lessees in an oil lease covenanted to commence operations within sixty days and to complete one well within three months thereafter, and, in case of failure, to pay the lessor for such delay $1,000 per annum within a certain period; it was further agreed that a failure to complete one well, or to make such payment within that period, should render the lease " null and void," so as "to remain without effect between the parties." In a proceeding by the lessor, on failure of the lessee to put down the well, to recover the $1,000, or a proportional part thereof, covering the period during which he had been deprived of his property, the counsel for the defendant submitted a point for instruction to the jury as follows:

" That there can be no recovery in this case because at the

time of bringing this suit the contract or lease sued on was null and void and not in existence ; that the non-payment of the rent claimed in this case, instantly, upon its non-payment, and ipso facto, rendered the lease null and void."

The point was refused, and in this court the refusal was assigned for error. The opinion of this court was delivered by our brother WILLIAMS, who, in disposing of this branch of the case, distinguished the rights of the lessees from the rights of the lessors, as follows : " But the acts that forfeited their (the lessees') rights did not also forfeit those of the lessor. Their liabilities growing out of their non-performance are to be distinguished from their rights under the contract. The latter they could forfeit, but the former belonged to the lessor and could be lost only by his act. The lessees promised to complete one well within a given time. This was for the benefit of the lessor. If this was not done he was to be compensated in money. If the money was not paid he was at liberty to rid himself of his tenants and resume the possession of his land. But the construction contended for by the plaintiffs in error transfers the punishment for the breach of the contract from him on whose default it arises to the innocent injured party. Because the lessees have secured the control of the land of the lessor by covenants which they have broken, the lessor shall be deprived of all redress at law, by the very acts of his lessees which give him a cause of action. Their default takes away his remedy. The acts or omissions of which he complains are an answer to his complaint. We should need the constraint of insurmountable necessity to induce us to adopt the construction contended for." The ruling of the court below was approved and the judgment affirmed.

Thus it appears that the distinction formerly maintained between the rulings of the English courts and of the courts of our sister states, and the rulings in Pennsylvania, is no longer found to exist. We have by slow approaches at last apparently turned into the general current of cases, in which is found, without doubt, the great weight of authority, both in England and in this country.

We are of opinion that the defendant should have been denied the advantage of its own default; and as the lessor in this case has not, either by word or act, availed himself of the

privilege of forfeiture, but, on the contrary, by a demand for payment of the price of the lessee's delay, has affirmed the continuance of the contract, there is nothing shown to prevent his recovery. And as the affidavit of defence is deemed insufficient to prevent judgment,

> The record is remitted to the court below with directions to enter judgment against the defendant, for such sum as to right and justice may belong, unless other legal or equitable cause be shown why such judgment should not be entered.