[Civ. No. 3938.   Second Appellate District, Division One.—July 16, 1923.]

TITLE INSURANCE & TRUST CO. (a Corporation), as Executor, etc., Appellant, v. AMALGAMATED OIL COMPANY (a Corporation), Respondent.

[1] LANDLORD AND TENANT—ACCRUAL OF RENT—WHEN DUE.—Rent payable on a day certain accrues and becomes due at the very beginning of said day, and by no act of the tenant thereafter, even though performed on the same day, can the owner of the premises be divested of his right to said rent.

[2] ID.—LIABILITY FOR RENT—CONSTRUCTION OF OIL LEASE.—Under an oil lease for a specified term of years, but which provides that in the event the lessee has not begun the operation of drilling the first well within one year from the date of the lease the "lessor agrees to extend the time therefor one year for the additional consideration" of certain specified graduated monthly rentals and that "said considerations shall be paid monthly in advance and shall cease at the beginning of drilling operations or the abandonment or forfeiture of this lease," the lessee is personally responsible for the payment of the rent specified to be paid after the expiration of one year and until the lease is abandoned or forfeited by one party or the other as in said lease provided.

[3] ID.—ASSIGNMENT OF LEASE—LIABILITY OF ASSIGNEE.—Where such lease is assigned by the lessee, the assignee receiving a written assignment of said lease, "together with all rights and privileges, burdens and benefits in said lease set forth," the assignee becomes liable for the performance of all the obligations agreed to by the original lessee.

[4] PAYMENT—GIVING OF CHECK.—The giving of a check for an antecedent debt is not an absolute payment and extinguishment of the debt in the absence of an agreement giving it that effect.

APPEAL from a judgment of the Superior Court of Los Angeles County.   Victor R. McLucas, Judge.   Reversed.

The facts are stated in the opinion of the court.

Frank M. Gunter and Janeway, Beach & Pratt for Appellant.

2.   Rights of parties to oil or gas lease forfeited for default in payment to be made in lieu of development, notes, 43 **L. R. A. (N. S.)** 487; 44 **L. R. A. (N. S.)** 54.

Gibson, Dunn & Crutcher and H. F. Prince for Respondent.

CURTIS, J.—On April 10, 1919, plaintiff's testator, C. C. Conroy, executed and delivered to one Thomas H. T. Purman a lease of certain land situated in the county of Los Angeles. The lease gave to the lessee the exclusive right to enter upon the lands described therein, and to drill for, produce, extract, and take oil, gas, asphaltum, and other hydrocarbon substances from said land, and is what is commonly known and referred to as an oil lease. On May 9, 1919, said Thomas H. T. Purman and his wife, Jessie Purman, assigned said lease to the defendant herein, the Amalgamated Oil Company.

The portions of the lease material to a decision of this case are as follows:

"This agreement, made and entered into this 10th day of April, 1919, by and between C. C. Conroy, a single man, hereinafter called the lessor, and Thomas H. T. Purman, hereinafter called the lessee, both of the city and county of Los Angeles, state of California.

"Witnesseth: For and in consideration of the sum of ten ($10.00) dollars, in hand to the lessor paid, and of other valuable considerations, the receipt of all of which is hereby acknowledged, the lessor has leased, let and demised, and by these presents does lease, let and demise, unto the lessee the land hereinafter described, . . .

"The lessee shall hold said lands for the period of twenty years from the date hereof, unless otherwise forfeited by the lessee in accordance with the terms of this lease; and the lessee hereby leases from the lessor the above described lands for the purposes aforesaid and upon the conditions and for the considerations herein set forth.

"The lessee agrees that within one (1) year from the date hereof he will commence to drill a first well on the demised property and continue said operation of drilling with due diligence unless prevented by causes beyond his control, till oil is found therein in paying quantities or the lease abandoned, . . .

"Upon the violation by lessee of any of the provisions, terms or conditions of this lease, lessor may, by notice to lessee as provided, cancel and set aside this lease, and said

cancellation shall take effect thirty (30) days after giving such notice, and then only in the event that said provision, term or condition, or provisions, terms and conditions, has or have not in the interim been complied with by lessee.

"In the event lessee has not begun the operation of drilling the first well within one year from date hereof, lessor agrees to extend the time therefor one year for the additional considerations of six hundred ($600) dollars for the first month, seven hundred ($700.00) dollars for the second month, eight hundred ($800) dollars for the third month, nine hundred ($900) dollars for the fourth month, one thousand ($1000) dollars for the fifth month, eleven hundred ($1100) dollars for the sixth month, twelve hundred ($1200) dollars for the seventh month, thirteen hundred ($1300) dollars for the eighth month, fourteen hundred ($1400) dollars for the ninth month, fifteen hundred ($1500) dollars for the tenth month, sixteen hundred ($1600) dollars for the eleventh month, and seventeen hundred ($1700) dollars for the twelfth month thereof. Said considerations shall be paid monthly in advance and shall cease at the beginning of drilling operations or the abandonment or forfeiture of this lease.

"Lessee reserves the right to forfeit this lease, in whole or in part, at any time he may elect, by the payment of ten dollars, as liquidated damages in full, to lessor for so doing."

It does not appear that the lessee, or his assignee, the defendant herein, ever entered into possession of the lands described in said lease, or ever commenced the drilling of any well thereon. We assume that no such entry was made, and that no well was ever drilled, for it was stipulated at the trial that the defendant, by virtue of the right given it under the assignment, had elected to keep said lease alive, by the payment of the monthly payments as provided in said lease, and had paid to the said C. C. Conroy the monthly payments provided for in said lease up to and including the payment of $1,500 for the month 'of January, 1921.

The case was submitted upon an agreed statement of facts, and among other stipulations were the following:

"That, during the month of February and prior to February 9, 1921, the defendant, by its officers authorized

therefor, issued its voucher check in the sum of $1,600.00, payable at and drawn upon the Farmers & Merchants National Bank of Los Angeles, Cal., in payment of the monthly rental for the month of February, 1921, and sent said check to the said C. C. Conroy through the United States mail. That thereafter and in due course said check was received and accepted by said C. C. Conroy. That thereafter and on the 9th day of February, 1921, the defendant telegraphed to the Farmers & Merchants National Bank at Los Angeles, Cal., instructing said bank to refuse payment on said check.

"That thereafter and on the 10th day of February, 1921, during the regular banking hours, said check duly indorsed was presented by said C. C. Conroy to said Farmers & Merchants National Bank for payment, and payment was refused. Said voucher check with its indorsements and duly marked 'payment refused' is in words and figures as follows:

66636

Expense Voucher    Form 219–E    Standard

No. 2011

Amalgamated Oil Company

Los Angeles, Cal., Feb. 3, 1921, to C. C. Conroy, Dr. Registered in February, 1921, 1819 Montrose St., Los Angeles, Calif.
For rental from February 10th, to
March 10th, 1921, of property situated in
the San Francisco Ranch, Los Angeles County, California, as per terms of lease dated April 10, 1919,

$1,600.00#

Feb 5 1921
Examined: W. Hutchison For the Auditor.
Approved: H. M. Giannini, for the Auditor.
Approved: F. T. Wilkinson.
Approved for payment R. F. Henley, For the Auditor.

When signed by the Treasurer or his duly authorized representative and properly indorsed by Payee, this voucher becomes a SIGHT DRAFT on this Company for One Thousand Six Hundred Dollars ($1,600#) in full settlement of above account and is payable through Farmers and Merchants National Bank, Los Angeles, Cal.

B. J. ROSE, For the Treasurer.

(Indorsed with rubber stamp on the face of said check 'PAYMENT STOPPED,' also Clearing Hse. Stamp)

(Reverse or back of said check) 'Indorse here: This Voucher is indorsed as an acknowledgment of the receipt of payment in full of account as stated within. C. C. Conroy, Payee.'

"It was further stipulated that on said 10th day of February, 1921, and at or about the hour of 4:00 o'clock P. M., the defendant deposited in a receptacle provided for the deposit of delivered mail at the residence of said C. C. Conroy, 1819 Montrose street, Los Angeles, Cal., a written notice, quitclaim deed and $10.00 in legal tender, said notice, deed and tender being inclosed in an unstamped envelope addressed to said C. C. Conroy, . . . " But said C. C. Conroy never accepted said tender or deed.

The action was instituted on said voucher check to recover the sum of $1,600, the amount alleged to be due thereon. The court rendered judgment in defendant's favor and plaintiff appeals therefrom.

By reference to those portions of the lease above quoted it will be seen that the term of said lease was for the period of twenty years from the date thereof, unless otherwise forfeited by the lessee in accordance with the terms of the lease. Two methods of terminating said lease are provided therein, one of which may be exercised by the lessor and the other by the lessee. Upon the violation by the lessee of any of the provisions, terms, or conditions of said lease, the lessor might, by notice to the lessee, cancel and set aside the lease, but said cancellation could not take effect until thirty days after the giving of said notice, and then only upon the failure of the lessee to comply with the terms, conditions, or provisions, the violation of which furnished the lessor the right to cancel the lease. On the other hand, the lessee might forfeit or terminate the lease, in whole or in part, at any time he might elect, by the payment of the sum of ten dollars to the lessor as liquidated damages.

It is not contended that the lessor ever made any attempt to cancel the lease, so that if the lease was ever terminated or forfeited, it was so terminated or forfeited by the act of the lessee, or rather by the act of his assignee, the defendant herein. The defendant attempted to do this on February

63 Cal. App.—3

10, 1921, by depositing, at about 4 o'clock in the afternoon of said day, a written notice, quitclaim deed, and the sum of ten dollars in legal tender, in the mail-box of the lessor, said C. C. Conroy. It is not seriously contended by the appellant that these acts of the defendant did not work a forfeiture of the lease. We are of the opinion that they did, and that the lease became forfeited at the time of the deposit of said sum of ten dollars for the lessor. We are further of the opinion that up to the time of said deposit the lease was a valid and subsisting contract between the parties.

It was provided in the lease that the lessee should commence the drilling of a well upon the real property described in said lease, within one year from the date thereof, and that upon his failure so to do the lessor agreed to extend the time of the commencement of said drilling for a period of one year upon the payment of certain sums of money, monthly in advance, on the tenth day of each month. As we have already seen, no drilling was ever commenced, and the defendant, who in the meantime had succeeded to the rights of the original lessee, began the making of said monthly payments and paid the same up to and including the tenth day of January, 1921. The next payment became due on February 10, 1921, and it is the contention of appellant that this payment became due the first minute of the day of February 10th, and that a cancellation or forfeiture of the lease by the defendant in the afternoon of said day could not relieve defendant from its obligation, if any such obligation existed, to pay said rent which accrued and became due at the very beginning of said tenth day of February. In this contention we agree with appellant. [1] The law is well settled that rent payable on a day certain accrues and becomes due at the very beginning of said day, and that by no act of the tenant thereafter, even though performed on the same day, can the owner of the premises be divested of his right to said rent. We do not understand that respondent seriously controverts this proposition of law. [2] Respondent does contend, however, that by the terms of the lease there is no covenant on the part of the lessee to pay any rent whatever, and that conceding the lease was not terminated by it until the afternoon of the 10th of February, and that such termination could not affect the pay-

ment of any rent accruing or falling due on said day, still plaintiff cannot recover in this action for the reason that the lease contains no covenant on the part of the lessee whereby he expressly or impliedly agreed to pay any rent. Respondent's contention being that the terms or provisions in the lease respecting the payment of rent amounts simply to a condition under which the life of the lease may be prolonged, and by the performance of which by the respondent, it may continue its rights thereunder; that said provisions do not in any sense amount to a covenant on the part of the lessee to pay the rent, and that any failure to perform said condition, on the part of respondent, gave to the lessor the right to cancel the lease, but no right to maintain any suit to collect said rental. It must be conceded that there is not in the lease any direct promise on the part of the lessee in precise terms to pay the rent. Nowhere in the lease can there be found the words "the lessee agrees" or "the lessee promises," in so far as the payment of the rent is concerned. Appellant has called the attention of the court to the following provision of the lease: "In the event lessee has not begun the operation of drilling the first well within one year from date hereof, *lessor agrees to extend the time therefor one year* for the additional consideration of . . . [then follow the graduated monthly rentals] *said considerations shall be paid monthly in advance and shall cease* at the beginning of drilling operations or the abandonment or forfeiture of this lease."

Appellant claims that the lessee, having signed the lease containing the above provision, made himself personally responsible for the payment of the rent until the lease was terminated by one of the parties, and that such words amount to an express agreement on his part to pay said rent, and that an action will lie on this agreement to recover the amount of rent due. The question, therefore, as to defendant's liability must be determined by a construction of this provision of the lease last above quoted.

In the case of *Preble* v. *Abrahams,* 88 Cal. 245 [22 Am. St. Rep. 301, 26 Pac. 99], the parties had entered into a contract whereby the plaintiffs agreed to sell to the defendant, for $125 per acre, forty acres of land and upon the payment of said sum plaintiffs would execute and deliver to defendant a deed to said land. The court held that the

agreement "obligated the defendant as strongly to buy and pay the price specified for the land as it did the plaintiffs to sell it for that price." This case has been approved in *King-Keystone Oil Co.* v. *San Francisco Brick Co.*, 148 Cal. 87 [82 Pac. 849], and *Samuels* v. *Ottinger*, 169 Cal. 209 [Ann. Cas. 1916E, 830, 146 Pac. 638].

In *King-Keystone Oil Co.* v. *San Francisco Brick Co.*, *supra*, the plaintiff agreed by written contract to sell to defendant all the petroleum to be used by the latter during a certain year. Action was brought to recover damage for the breach of this contract. The only point made on appeal was that the case failed to show that the defendant agreed to buy the oil in controversy. In deciding the case in plaintiff's favor, the court said: "The contract in this respect is precisely the same in legal effect as that construed in *Preble* v. *Abrahams*, . . . In that case, as in this, the contract was signed by both parties, but there was no language expressing an agreement on the part of Abrahams, the purchaser, to buy the property which the other party agreed to sell." After quoting from *Preble* v. *Abrahams*, the court continued as follows: "So in the case at bar, in which the contract is much more complete and certain in this respect than the one considered in *Preble* v. *Abrahams*, there is a clearly implied agreement on the part of the defendant to buy the oil which the plaintiff thereby agreed to sell."

In *Samuels* v. *Ottinger*, *supra*, the plaintiff leased to the defendant certain premises. During the term of the lease, the defendant assigned it to a third party who paid the rent for one month and then defaulted. Plaintiff thereafter instituted three actions against the defendant to recover installments of rent accruing during three different periods of time under the lease. In deciding that the defendant was liable under the terms of the lease, the court said: "The lease in question was executed by the lessees, as well as by the lessor. It begins by stating that the lessor leases the premises to the lessees, for the term of ten years, at the monthly rental above stated, 'payable in advance on the twentieth day of each and every month.' By subsequent clauses the lessees agree to pay all bills for water, gas, and electricity furnished to the premises, and all taxes on improvements to be erected by said lessees. The privilege

of subleasing is expressly given, as is permission to erect buildings, which, if they comply with certain conditions, are to be purchased by the lessor at the expiration of the term. The lessees agree to insure the improvements, 'and said insurance shall be made payable to the lessor and the lessees jointly, for the purpose of securing the said lessor in the *payment of the rents herein stipulated.* . . . ' By another clause it is agreed that the improvements to be erected 'shall be security for the rent *herein stipulated to be paid* . . . ' Finally, it is agreed that if the lessees hold over beyond the term provided in the lease, such holding over shall be deemed merely a tenancy from month to month, 'and at the same monthly rental that shall have been *payable hereunder by said lessees* immediately prior to such holding over.'

"If it is possible to express a contractual obligation to pay rent by any form of words other than a direct promise, in exact terms, to pay such rent, the language we have quoted from the lease before us, imposes that obligation on the lessees. The lessor agrees to lease the premises to the lessees at a given rental, 'payable' at stated times. The writing is signed by the lessees as well as by the lessor."

The court then proceeds to refer to other terms of the lease in support of its conclusion that it contained an express agreement on the part of the lessee to pay the rent, but none of the terms, to which the court subsequently referred, were, in our opinion, any stronger against the lessee than those contained in the above quotation from the opinion in said case. It also reviewed a number of cases from other jurisdictions, pointing out that the decisions were not entirely in harmony upon this question, and concluded its review by adopting the reasoning of those which held that provisions, similar to those in the lease in this action, constituted a covenant to pay the rent provided therein.

Among the cases cited in *Samuels* v. *Ottinger, supra,* with approval by the court, were *Bussman* v. *Ganster,* 72 Pa. St. 285, and *Linn* v. *Ross,* 10 Ohio, 412 [36 Am. Dec. 95]. The former case was one for the recovery of rent, the lease having been signed by both parties, and the only provision contained therein which could possibly be construed as a covenant on the part of the lessee to pay the rent were the words "the rent to be paid monthly," and in holding the

lessee liable, under such a lease, the court said: "It is expressly said in this lease, *the rent to be paid monthly.* To be paid by whom? Surely by the lessees, the parties of the second part executing the instrument. When therefore they as such parties accept the demise of the premises at a certain annual rent, *the rent to be paid monthly,* it is an express covenant by them to pay the rent, . . . "

The present action cannot, in our opinion, be distinguished from the foregoing cases, and we think that the same rule invoked therein should be applied by this court. The lease in the present case provides that the lessor agrees to extend the time, within which the operation of the well may be begun, one year, for certain additional considerations, and that "said considerations shall be paid monthly in advance." To be paid to whom and by whom? Unquestionably they are to be paid to the lessor, and we think with equal clearness the lease provides that they are to be paid by the lessee. In further support of this conclusion, we would call attention to the following provision in said lease: "The lessee shall hold said land for the period of twenty years from the date hereof unless otherwise forfeited by the lessee in accordance with the terms of this lease and *the lessee hereby leases from the lessor the above described land for the purposes aforesaid and for the considerations herein set forth.*" This provision, read in connection with that which provides that "said considerations shall be paid monthly in advance," seems, in our opinion, to present an additional reason for holding that the lessee has bound himself by the lease to pay the rent. By these provisions of the lease, he has leased the lands upon the considerations therein set forth, and among these considerations is the payment of said sums, monthly in advance. We are, therefore, unable to arrive at any different conclusion than that the lessee, upon the execution of the lease, made himself personally responsible for the payment of the rent provided for therein.

[3] The defendant received a written assignment of said lease, "together with all rights and privileges, *burdens* and benefits in said lease set forth." It thus became liable for the performance of all the obligations agreed to by the original lessee. (Civ. Code, secs. 1589, 3521.)

In support of the respondent's contention that the terms of the lease contain no covenant on the part of the lessee to pay the rent, respondent's counsel have cited the following cases: *Glasgow* v. *Chartiers Oil Co.*, 152 Pa. St. 48 [25 Atl. 232]; *Van Etten* v. *Kelly*, 66 Ohio St. 605 [64 N. E. 560]; *Snodgrass* v. *Southern Penn. Oil Co.*, 47 W. Va. 509 [35 S. E. 820]; *Butcher* v. *Greene*, 50 Ind. App. 692 [98 N. E. 876]; *Eastern Oil Co.* v. *Smith*, 80 Okl. 207 [195 Pac. 773]; *Frank Oil Co.* v. *Belleview Gas & Oil Co.*, 29 Okl. 719 [43 L. R. A. (N. S.) 487, 119 Pac. 260]; *Ohio Oil Co.* v. *Detamore*, 165 Ind. 243 [73 N. E. 906]; *United States* v. *Comet Oil & Gas Co.* (Okl.), 187 Fed. 674; *Hickernell* v. *Gregory*, (Tex. Civ. App.), 224 S. W. 691; *Texas Co.* v. *Curry* (Tex. Civ. App.), 229 S. W. 643. These cases all involved the construction of so-called oil leases. The leases under consideration in the first seven of these cases, if we have read them correctly, all contained provisos that the lease should become null and void upon the failure of the lessees to make certain designated payments, and in the case of *United States* v. *Comet Oil & Gas Co., supra*, being the eighth case mentioned above, the lease provided that the failure to make the payments required shall subject the lease to forfeiture without further notice to the lessees. In all these cases the courts held that these provisos were mere conditions and were not covenants which would support an action on the part of the lessor to recover the rent. They further held that by a failure of the lessee to make the payments provided in his lease, that his rights thereunder were forfeited immediately, and without any act on the part of the lessor or any other person. It would necessarily follow, that after a lease is forfeited no rent could accrue thereunder. It would be the height of injustice to permit the lessor to enjoy the forfeited estate, and at the same time to permit him to recover rent for the estate during the period that he is enjoying the same. As we have already seen, the lease in the present case contains no such forfeiture clause, but, on the other hand, the lease remained a binding contract between the parties after default in the payment of the installment falling due February 10, 1921, and until the lessee terminated the same by making payment of said sum of ten dollars in the afternoon of said day.

The other two cases, cited by respondents, and being the two last enumerated above, were not actions for the recovery of rent at all, but were instituted for the purpose of declaring the leases forfeited and whatever language might have been used therein by the courts in arriving at their conclusions would not, in our opinion, be applicable to the questions involved in the present case. We are of the further opinion that none of the cases cited by respondent and enumerated above sustain its contention, and particularly so, in the face of the decisions from our own supreme court, which all seem to be favorable to the contention of the appellant.

It is suggested by counsel for respondent that there should possibly be a different rule in the construction of these so-called oil leases than ordinary leases of real property, and especially should this be so when, as in the present case, the defendant did not go into possession of the leased property, but the only right it had under said lease was to enter upon said real property and explore for oil and other mineral substances. We fail to see the force of this suggestion. The lessee under the present lease was given certain rights in the leased property, and so long as he enjoyed them the lessor was deprived of the privilege either to exercise these rights personally or to dispose of them to others, and so long as the defendant, as assignee of the lessee, owned and exercised these rights under the lease, just so long was it obligated to pay for the same as provided in the lease.

Appellant also contends that by the giving of the check by the defendant, and the acceptance thereof by the plaintiff, the obligation created by the lease became extinguished, and the obligation to pay the checks substituted therefor, and that no act thereafter by the defendant, even if defendant was not liable under the lease, could affect his obligation created under the check. In other words, appellant contends that the check was given and accepted in absolute payment and extinguishment of the obligation under the lease. [4] The rule is well settled that the giving of a check for an antecedent debt is not an absolute payment and extinguishment of the debt in the absence of an agreement giving it that effect. (*Comptoir D'Escompte* v. *Dresbach,* 78 Cal. 15 [20 Pac. 28]; *Dingley* v. *McDonald,* 124 Cal. 90 [56 Pac. 790].) There is not in this case, in our

opinion, any evidence of any agreement between the parties that the check was either given or accepted with the understanding that the debt for which it is given should thereby be extinguished. The check was received in the ordinary course of business, and if paid, the original debt, or the debt for which it was given, would be extinguished, but if for any reason the check was unpaid plaintiff's testator would still have had his action upon the original indebtedness. The check bore certain statements and indorsements of the parties, but these would not, we think, constitute an agreement that the check itself was given and accepted as an absolute payment of the debt.

The check, however, having been given in payment of rent due plaintiff from the defendant, was based upon a valuable consideration, and defendant is liable for the payment of the amount thereof.

The judgment is reversed, with directions to the trial court to enter judgment in favor of plaintiff as prayed for in the complaint.

Conrey, P. J., and Houser, J., concurred.