UNITY CO.

*vs.*

GULF OIL CORPORATION.

Cumberland. Opinion, December 5, 1944.

*Frank P. Preti,* for the plaintiff.

*Woodman, Skelton, Thompson & Chapman,* for the defendant.

Sitting: Sturgis, C. J., Thaxter, Hudson, Manser, Murchie, JJ.

Manser, J.  As this case comes up on report, the Court has jury powers to determine the facts established by the record, and the reasonable inferences to be drawn therefrom, as well as the law applicable thereto. The suit is for four months' rent from December 1, 1943 to April 1, 1944, a total of $300, accruing under the terms of a written lease between the parties. The contention of the defense is solely that the lease provided that, upon the happening of a contingency or condition subsequent, the defendant had the option to surrender and cancel the lease and be relieved from the payment of rent or any further obligation. It is claimed that the event occurred which justified the defendant in exercising such option, and that due notice of cancellation was given, taking effect on November 30, 1943.

The essential facts are found to be as follows: The Unity Co., plaintiff corporation, is engaged in real estate operations. It purchased a city lot in South Portland and entered into negotiations with the defendant to lease the premises after the plaintiff had, at its own expense, built a gasoline filling station according to specifications and blue prints furnished by the defendant. The lease was executed in the summer of 1939, but occupancy and rental were to begin upon completion of the building so that the lease was actually for a ten-year term from October 24, 1939. The rental was $900 annually, but the lessor was required to pay taxes and make repairs.

The defendant sublet the premises and had three tenants between November 1939 and July 8, 1941. Since that time, the station has never been operated for sale of products to the public. Sometime in 1942, some of the gasoline pumps were removed.

In the autumn of 1942, the premises were occupied by a sub-lessee or tenant for business purposes which had nothing to do with the operation of a gasoline filling station.

In November 1941, the City of South Portland adopted a zoning ordinance, which made the particular section of the city where the premises were located, a residential zone for single families. The ordinance contained, however, the following exemption:

> "Any lawful building or use of a building or any part thereof existing at the time of adoption of this ordinance may be continued, although such building or use does not conform to the foregoing provisions hereof. If such nonconforming use be abandoned for more than one year, any future use of said building shall be in conformity with the provisions of this ordinance."

In December 1942, both the plaintiff and defendant were notified that there would be no renewal of the yearly permit required by the municipality to sell gasoline, upon the ground that the defendant had abandoned the use of the building as a filling station for more than one year. Appeal was made by the defendant to the Zoning Board and later to the Appeal Board in the attempt to secure a renewal of the permit, but without success.

The claim by the defendant to the right to a renewal of the permit was based upon the contention that there had not been a continuous abandonment of the use of the premises for more than one year, because on June 25, 1942 the defendant made a sale of six gallons of gasoline. The sale was made for the avowed purpose of preventing an abandonment of use. A representative of the defendant went with one of its employes in his car to the premises. As the electric motors were not in operation, a hand pump was used, and the gasoline emptied into cans which were then put in the car. A sales slip was made, showing payment of $1.22. This is the sole claim upon which the defendant relied at the time it endeavored to secure renewal of permit.

It was not claimed that the station was open for business in the usual sense of the term, or that the public could procure delivery of gasoline by the usual and ordinary method. Such a farcical performance was properly held by the governmental authorities to be of no avail.

The provision in the lease upon which the defendant relies is as follows:

"It is understood and agreed that if by reason of any law, ordinance, or regulation of properly constituted authority, or by injunction Lessee is prevented from using all or any part of the property herein leased as a service station for the sale and storage of gaso-

line and petroleum products, or if the use of the premises for the purposes herein permitted shall be in any manner restricted, or should any Governmental authority refuse at any time during the term of this lease to grant such permits as may be necessary for the installation of reasonable equipment and operation of said premises for the permissible purposes hereunder, the Lessee may, at its option, surrender and cancel this lease, remove its improvements and equipment from said property and be relieved from the payment of rent or any other obligation as of the date of such surrender."

Provisions for the forfeiture, cancellation or termination of a lease are usually inserted for the benefit of the lessor, and on account of some default on the part of the lessee. Here the provision was clearly for the benefit of the lessee alone. The strict rules applicable to forfeitures when claimed by lessors apply with like force to lessees who attempt to take advantage of cancellation provisions for their own benefit, and it must be shown that the contingency arose, or the condition subsequent occurred without fault on the part of the lessee. In other words, the tenant cannot nullify the lease by taking advantage of his own default and thus escape liability on a burdensome contract. 32 Am. Jur., Landlord and Tenant, §§825-849. Examination and analysis of the record is, therefore, made to determine whether the defendant has shown that it was prevented from using the premises without fault on its part.

The issue is important to both the lessee and the lessor. If the lessee has permanently lost the right to use the premises and yet is bound to continue rental payments, it will be required to pay a total of approximately $5,300 in $75 monthly installments. As to the lessor, assuming the continuance in effect of the zoning ordinance, if the lessee is entitled

to cancellation of the lease, the property in its present condition is valueless and is still subject to taxation. The owner can realize no income from it. The only alternative is to remove the present filling station structure, sell the land, or retain it and erect a single family dwelling thereon.

The only witness for the defendant was a man who was in charge of its operations in the Portland area. He testified to the causes and events which brought about the closing of the station. He admitted that it was unprofitable from the beginning of the lease in 1939, that he had trouble in getting operators, that the last operator took the station in the spring of 1941 and left it on July 8 of that year, since which time no one has ever been employed at the station. After the station was closed, he testified that efforts were made to secure a new operator but

"Rationing came into effect at that time, which was a great handicap, and the labor situation was very bad in South Portland. We were unable to get someone to operate it."

Later, he was asked what efforts were made to get an operator and answered:

"Made personal contacts and ran an ad in the paper."

So far as appears of record, this is all that was done to avoid the effect of the zoning ordinance, the provisions of which were well known to the defendant.

The lease provided:

"Said premises are leased for the purpose of the sale and storage thereon of gasoline, petroleum and petroleum products, and at Lessee's option for the conduct of any other lawful business thereon."

154

The three reasons given for failure to reopen the station and of the efforts made to do so, require consideration from the viewpoint of the duty resting upon the defendant to prevent the loss of use of the premises under the provisions of the zoning ordinance, and which could be accomplished by not abandoning such use for a year. With reference to the statement that, when the station was closed on July 8, 1941, "rationing came into effect at that time which was a great handicap," it is to be noted that governmental rationing did not begin until May 15, 1942, more than ten months afterwards.

Again, the witness said, "The labor situation was very bad in South Portland." There is nothing of record as to how acute the labor situation was in that particular locality except this bare assertion, but, of course, the defendant was not confined to securing an operator from that vicinity. It was not until after the declaration of war made by our Government on December 7, 1941, that induction of men into the armed services began in any great volume.

These facts and dates are not definitely in the record, yet the Court will take judicial notice of historical facts, matters of public notoriety and interest transpiring in our midst. *Weeks* v. *Smith*, 81 Me., 538 at 544, 18 A., 325; *Opinion of Justices*, 70 Me., 608; *Prince* v. *Skillen*, 71 Me., 361 at 368, 36 Am. Rep., 325.

As to efforts made to secure operators, again is found the bare statement that the defendant "Made personal contacts and ran an ad in the paper." Nothing appears of record as to the number of personal contacts nor as to the extent or amount of publicity given to the need for operators, nor as to the inducements offered. It appears that the only method which occurred to the defendant for operation of the station was to secure a person who would pay rent and take his own chances of making a living from the sale of products provided by the defendant. There was apparently no undertaking

whatsoever by the defendant to place one of its own employees in charge of the station, although it would have been entirely within the purview of the lease to do so. It would then have received the gross profit from the sale of products, less the wages paid the employee. The provision for subletting was permissive, not compulsory.

The inferences are very strong that, after making some desultory motions having the appearance of attempts to fulfill the obligations of the zoning ordinance, the defendant is now undertaking to seize upon the action of governmental authorities as an excuse for termination of a contract which had proved to be unprofitable and burdensome. The evidence carries with it the conviction that, if the defendant had really felt it imperative to operate the leased station to protect its own interest, it would have, without too great difficulty, found a way to do so.

It was incumbent upon the representatives of the municipality to enforce its laws. They were entirely justified under the circumstances. There had been an abandonment of the use of the property as a filling station for more than one year, and such abandonment was the fault of the defendant, and it cannot, therefore, avoid its obligations under the lease.

While few cases presenting similar factual circumstances appear to have required judicial consideration, the principle is well established that whether it be a lessor or lessee who seeks to be relieved from an obligation or to enforce a right to cancellation of a lease, he must present sufficient evidence to prove that he was in no way responsible for creating the situation of which he seeks to take advantage.

In *Noland* v. *Cooperage Co.* (Ky.), 82 S. W., 627, the plaintiff leased land for a nominal consideration for the erection of a stave mill but with the further provision that lessee should furnish refuse wood for use for the house and grist mill of the lessor. The lessee did not build any stave mill but continued to occupy the premises. It was held that the lessee

could not be allowed to avoid liability for rent by its own failure to erect the stave mill.

In *Pizitz-Smolian* v. *Randolph* 221 Ala., 458, 129 So., 26, where the lease of a building restricted the use to certain business, it was held that the lessee was not relieved from performance because the right to continue business was rendered less profitable or easy.

As it is sometimes expressed, the liability for rent continues unless the contingency which prevents use and occupancy is unavoidable. *Calechman* v. *A. & P. Tea Co.,* 120 Conn., 265, 180 A., 450, 100 A. L. R., 302. See also *Hayes* v. *Goodwin,* 253 Pa., 607, 98 A., 727; *Reid* v. *Fain,* 134 Ga., 508, 68 S. E., 97; *Brewing Co.* v. *Roser,* 169 Ky., 198, 183 S. W., 479; *Wills* v. *Gas Co.,* 130 Pa., 1222 5 L. R. A., 603, 18 A., 721.

The entry will be

*Judgment for the plaintiff for $300 with interest from date of the writ.*