**SAM D. BENNETT v. ORANGE STATE OIL COMPANY**, a corporation, and **ESTHER L. POWERS**.

31 So. (2nd) 921                         June Term, 1947
August 1, 1947                              En Banc
Rehearing denied October 18, 1947.

*B. K. Roberts* and *W. J. Oven, Jr., Carlton & Ellis,* for appellant.

*Hudson & Cason, Liddon, Fee & Parker,* for Orange State Oil Company, and *Butt & Akridge* for Esther L. Powers, appellees.

HOLT, Associate Justice:

After a full review of all the transactions and negotiations which over a long period of years, including leases, cancellations thereof, agreements for sale of petroleum products, loans, mortgages, guarantees, with a bankruptcy proceeding thrown in for good measure, no other conclusion can be reached save that of the Chancellor, which I find to be eminently correct.

We have already decided a number of issues between the parties in Bennett v. Orange State Oil Co., 157 Fla. 27 So. (2nd) 417. This case cannot be dismissed from consideration. To reverse the Chancellor's order now being reviewed the prior opinion (Bennett v. Orange State Oil Co., 157 Fla. 882, 27 So. (2nd) 417, would have to be specifically reversed so that the parties could be restored to their original position before the institution of any litigation between them.

While the testimony is voluminous proper analysis thereof would lead one to the inevitable conclusion that fraud, over-reaching, undue advantage, and all allied elements thereof are totally absent. The appellant sums up and decides his own

case against himself in these words found on page 85 of the transcript:

"A. Well, I wound up with the lease, the same amount, the same consideration in dollars and cents; you can put it that way."

The decree should be and it is affirmed.

THOMAS, C. J., TERRELL and BARNS, JJ., concur.

BUFORD and CHAPMAN, JJ., dissent.

BUFORD, J., dissenting:

Appeal brings for review a decree of the Circuit Court of St. Lucie County dismissing a bill of complaint in which appellant sought to enjoin appellee Orange State Oil Company, from evicting plaintiff from certain premises in Fort Pierce, from interfering with plaintiff in his possession of those premises and from enforcing and pursuing a certain judgment theretofore obtained by the defendant in an unlawful detainer proceeding recently pending between the same parties. It further sought to have a certain lease granted to Orange State Oil Company from one John W. Lowry decreed to be in fact a mortgage held by the Orange State Oil Company as security for an indebtedness of the plaintiff and to be held in trust for the plaintiff and sought to require the Orange State Oil Company to assign said lease to the plaintiff upon the latter's discharge of the indebtedness thereby secured; and the bill finally prayed that both defendants be held to hold the basic title to the property involved in trusts for the plaintiff upon the plaintiff exercising his option to purchase and pay for the same.

Motion to dismiss the bill was denied. Thereafter answers were filed by both defendants and the Chancellor proceeded to take testimony on issues raised by the pleadings.

After considering the testimony taken, final decree was entered on January 27, 1947, finding the plaintiff was not entitled to the relief sought and dismissing the bill of complaint as amended. From this decree appeal was taken.

The following facts appear to be established by the record, viz:

In 1925 one John W. Lowry owned the property involved and in that year entered into a contract leasing the premises to the plaintiff, at the same time and in the same instrument giving plaintiff an option to purchase the property for $55,-000.00. At that time the property was vacant and unimproved. The plaintiff and those occupying the property under him erected valuable improvements thereon including a garage, show room and service station at a cost of about $44,000.00. These improvements are now worth at the present market value several times the sum of their cost. The lease in question was later in 1932 assigned to the Bennett Motor Company. In 1932 as a part of a single, continuous transaction Bennett Motor Company released and satisfied the lease. Lowry leased the premises to S. L. Williams, trustee, for a term of eighteen years at $100.00 per month and then gave the lessee option to purchase the property for $55,000.00 and, as a part of the same transaction, Williams as Trustee assigned the lease and option from Lowry to the plaintiff. By supplemental agreement in 1937 the lease was extended for an additional period of ten (10) years or until 1960. Plaintiff and those claiming under him have remained in possession of the property from 1926 to date and plaintiff has, since 1932, spent an additional $4000.00 in improving the property.

The record further shows that it has been necessary for plaintiff from time to time to borrow money to finance the buildings and improvements on the property; that he has given mortgages to secure the sum he borrowed and that Lowry cooperated with plaintiff in this financing and from time to time executed with the plaintiffs notes to evidence the indebtedness for the money so borrowed, it being always understood and agreed that plaintiff would discharge the notes. In 1933 plaintiff and Orange State Oil Company entered into a contract whereby plaintiff agreed to act as an independent commission agent for the Oil Company and the Oil Company agreed to furnish plaintiff for sale on the premises oils and petroleum products and agreed to pay the plaintiff certain commissions on the same thereof. This agreement continued in effect until March, 1946.

It is further shown that during the year 1941 plaintiff and

Lowry decided to refinance the indebtedness for money borrowed against the property and so advised the Oil Company. The Orange State Oil Company agreed to undertake negotiations with one of its banking connections to effectuate the refinancing. Plaintiff having implicit trust and confidence in the Oil Company, agreed to the placing of its financing arrangement in the hands of the Oil Company and authorized the Oil Company to proceed with the negotiations for the refinancing. Pursuant to this agreement, arrangement was worked out by the Oil Company with Barnett National Bank of Jacksonville whereby the plaintiff surrendered, for the purpose of refinancing the indebtedness, the lease which he then held from Lowry and Lowry then executed to the Orange State Oil Company a new lease and at the same time the Oil Company executed a sub-lease to plaintiff under which the plaintiff was to pay rental in the sum of $100.00 per month to be paid to Lowry plus $155.55 per month for a period of ten (10) years only to be used to discharge the obligation of $14,000.00 to Barnett National Bank. Lowry and plaintiff executed a mortgage with notes for $14,000.00 to Barnett National Bank and Orange State Oil Company hypothecated the lease from Lowry to the Bank as security for the $14,-000.00.

After the repayment of the loan from the bank, plaintiffs rent was to revert to the original $100.00 per month. Barnett National Bank on this security loaned the plaintiff $14,000.00, $12,700.00 of this loan was used to discharge various items of indebtedness which had been incurred by plaintiff and which plaintiff and Lowry had mortgaged the property involved to secure. The remaining $1,300.00 was paid over to the plaintiff.

Throughout this transaction Orange State Oil Company acted in behalf of the plaintiff who had been its commission agent for years and expected to continue as such. The Oil Company had acquired no additional rentals under the new agreement, no extension of the term of the lease, and plaintiff was recognized as having the right to continue his possession throughout the same time and at the same rental with the additional requirement that he pay monthly a sum exactly sufficient to meet the mortgage installments. The lease from

Lowry to the Oil Company was made for the purpose of securing the Oil Company against loss by reason of the indebtedness which it had under-written to the Bank.

This arrangement was carried out until March, 1946, when plaintiff made a claim against the Oil Company for something more than $67,000.00 as his alleged commissions on gasoline sold to the U. S. Navy. Then the Oil Company padlocked the storage tanks from which plaintiff obtained his oil and petroleum products for sale and cancelled the distribution contract it had given to the plaintiff. It is further shown that from March, 1941, to March 1946, an open, current and mutual account was maintained between plaintiff and the Oil Company and to this account the Oil Company each month charged the $255.55 for which plaintiff had become obligated. Not one monthly payment of rent as such was made by plaintiff to the Oil Company during this entire time. All rental payments had been made by those book entries.

On February 28, 1946, the Oil Company advised plaintiff in writing: "We are charging your account with the rent for March, 1946 $255.55."

Although this charge had been made in the manner customary between the parties and although the plaintiff had advised the Orange State Oil Company that the Oil Company was indebted to him for commissions for merchandise sold a sum of more than $67,000.00, the Oil Company in April, 1946, served notice on the plaintiff that it had elected to cancel the lease of the plaintiff for failure to pay the March rent and for failure to sell exclusively the products of Orange State Oil Company. Pursuant to the service of this notice, the Oil Company instituted an unlawful detainer suit against the plaintiff who attempted to plead his claim against the Oil Company as a set-off or counter claim. This was held not to be an available defense in that action. See Bennett v. Orange State Oil Company, 157 Fla. 882, 27 So. (2) 417. In that suit Orange State Oil Company prevailed and judgment was entered against the defendant. During the interim between the Barnett National Bank transaction and the institution of the above mentioned suit John W. Lowry had died and Mrs. Powers had become Executrix of his estate

and had agreed to convey the property to Orange State Oil Company.

It is shown that all rentals due by the plaintiff had been paid up to March, 1946, together with all instalments due under the obligations to Barnett National Bank, although the defendant Oil Company insisted that the rentals had not been actually paid for March until after the institution of the suit. It is also shown that the mortgaged indebtedness has now been fully discharged and that all rentals accruing since the institution of the suit have been paid.

We may say here that appellees appear to rely very strongly on our opinion and judgment in the case of Bennett v. Orange State Oil Company, supra. That case did not, and could not, involve the issues which are now before us. Therefore, what was said in that case could have but little, if any, weight on our present decision. See Rader v. Prather, 100 Fla. 591, 130 So. 15, in which we held:

"A court of equity has inherent power to relieve a tenant from the forfeiture of his estate because of a failure to pay rent at the time required by the terms of his lease.

"Courts of equity always mitigate forfeitures or relieve against them, when this can be done without doing violence to the contracts of the parties. The rule that a court of equity will relieve a lessee and set aside a forfeiture incurred by breach of a condition contained in his lease to the effect that the lessor may re-enter and put an end to the lessee's estate is based upon the notion that such condition and forfeiture are intended merely as security for the payment of money.

"Whenever it is just and equitable to do so, equity will relieve a lessee and set aside a forfeiture for the nonpayment of rent whether the lessee has been dispossessed by the lessor or not."

See case cited in support of these enunciations.

Under the facts shown here we are constrained to hold that the conveyance by lease to Orange State Oil Company comes within the purview of Section 697.01 Fla. Statutes 1941 (same F.S.A.) and was made for the use and benefit of the plaintiff Bennett and that plaintiff Bennett, having discharged

the obligations which the lease was given to secure, is entitled to have permanent injunction against the execution of the judgment rendered in the unlawful detainer proceedings, supra, and is entitled now to be returned to his status quo ante the cancellation and surrender of his lease at the time the lease was executed from Lowry to Orange State Oil Company with his lease then surrendered reinstated with all his rights thereunder, and that the lease from Lowry to Orange State Oil Company and all subsequent documents passing between Lowry and/or Mrs. Powers and Orange State Oil Company should be cancelled, set aside and held to be of no further force and effect. See Watkins v. Burnstein, 152 Fla. 828, 14 So. (2) 569; Markell v. Hilpert, 140 Fla. 842, 192 So. 293; Elliott v. Connor, 63 Fla. 408, 58 So. 241; Stovall v. Stokes, 94 Fla. 117, 115 So. 828; Gollnick v. Barker, 94 Fla. 885, 114 So. 527; Howard v. Godspeed, 101 Fla. 699, 134 So. 294; Holmberg v. Hardee, 90 Fla. 787, 108 So. 211; Fisher v. Grady, 131 Fla. 1, 178 So. 852; Rader v. Prather, supra.

It appears from the record here that Orange State Oil Company is not in position to claim a forfeiture because of plaintiff's failure to continue the exclusive sale of gasoline and other petroleum products of Orange State Oil Company because of the action of Orange State Oil Company in padlocking its storage tanks merely because the plaintiff claimed that the Oil Company owed him a large sum of money as commissions on the sale of its products from the storage tanks. The contract contemplated that the Oil Company would deliver its products to the plaintiff.

The record does not show that plaintiff ever declined to handle the products of Orange State Oil Company when delivery of same was offered to him. The Oil Company did the first overt act toward breaching the contract in this regard and is, therefore, barred from claiming a forfeiture. See Seaboard Oil Co. v. Donovan, 99 Fla. 1296, 128 So. 821; Shell Oil Co. v. Stiffler, 87 Utah 179, 48 Pac. (2) 503; Unity Co. v. Gulf Oil Corporation, 141 Me. 148, 40 Atl. (2) 4, 156 A.L.R. 297; Rader v. Prather, supra. So I think the decree should be reversed with directions.

CHAPMAN, J., concurs.