GLADYS VINCENT et al., appellees, v. KASER CONSTRUCTION COMPANY, an Iowa corporation, appellant.

No. 51163.

(Reported in 125 N.W.2d 608)

DECEMBER 10, 1963.

Ross H. Sidney and Thomas W. Carpenter, both of Des Moines, for appellant.

Baldrige & Baldrige, of Washington, for appellees.

PETERSON, J.—This is an action at law, tried to the court, for rent claimed by plaintiffs under the terms of a written lease, and for declaratory judgment for an amount due later under the lease. The trial court rendered judgment against defendant for two years rent of $500 per year which was past due, and rendered declaratory judgment for $500 as to the rent for the last year not yet due. Defendant has appealed.

There is only one question to be decided: Did the trial court commit error in holding the provision for termination of the lease constituted a condition subsequent, and consequently holding defendant cannot cancel a lease by taking advantage of its own wrong?

I. Plaintiffs were the owners of a farm of 346 acres in Washington County. February 12, 1958, they entered into an option to lease with defendant, together with a lease, to rent plaintiffs' farm under certain conditions for the purpose of drilling for limestone, sand or gravel. The agreement provided defendant should have 90 days in which to determine whether such property contained any of the minerals. If defendant, after such investigation, decided the prospects were favorable, the agreement would automatically become a five-year lease. Defendant notified plaintiffs on May 9, 1958, that the tests were favorable and the lease was consummated.

Defendant did not at anytime during the period of the lease conduct mining or quarrying operations on the farm. However, in accordance with the terms of the lease, on May 9, 1959, defendant paid plaintiffs $500 rental for the first year. On May 9, 1960, paid another $500 for rental for the second year. Defendant failed to make payment of the rent on May 9, 1961; May 9, 1962; and at the time of the trial in January of 1963 the final rental payment of $500 would become due May 9, 1963. The trial court in its findings of fact and conclusions of law granted judgment for $1000 and interest, and a declaratory judgment for $500 which was not due at said time, but which has since become due through the passage of time.

The contention of defendant is that it had a right to declare the lease canceled by reason of a clause which appears in the lease in the following words: "Failure to make any such payments shall terminate this lease."

It is the position of plaintiffs that this was a condition subsequent and that defendant did not have a legal right to consider the lease canceled in view of the delinquency in payment of rent being the fault of defendant.

II. The provision to pay rent under a lease which contains a condition that the lease shall terminate on such fail-

ure constitutes a condition subsequent. The lessor has the option to terminate the lease if he so elects, but the lease is not automatically terminated for the reason that the lessee may not take advantage of its own nonperformance of a contractual duty. Nitardy v. Thayer, 275 Wis. 459, 82 N.W.2d 325; Hanley Falls Creamery Co. v. Milton Dairy Co., 126 Minn. 226, 148 N.W. 46, 52 L. R. A., N. S., 718; 32 Am. Jur., Landlord and Tenant, section 825; 51 C. J. S., Landlord and Tenant, section 91; Restatement of Property, section 24, page 59; Markey v. Smith, 301 Mass. 64, 16 N.E.2d 20, 118 A. L. R. 274; Unity Co. v. Gulf Oil Corp., 141 Maine 148, 40 A.2d 4, 156 A. L. R. 297; Miller v. Compton, Tex. Civ. App., 185 S.W.2d 754; Bates v. Georgia Fertilizer Co., 144 Tenn. 32, 229 S.W. 153; Wills v. Manufacturers Natural Gas Co., 130 Pa. 222, 18 A. 721; Morris v. De Wolf, 11 Tex. Civ. App. 701, 33 S.W. 556; Chicago Daily News Pub. Co. v. Joyce-Watkins Co., Ill. App., 13 N.E.2d 117; Nelson v. Republic Iron & Steel Co., 240 F. 285; All-American Oil & Gas Co. v. Connellee, 3 F.2d 107.

 III. One of appellant's contentions for reversal is that the agreement between the parties was in the nature of a mineral drilling operation based primarily on the number of tons defendant would take out of plaintiffs' ground at ten cents per ton, and did not constitute an ordinary lease between parties for the rental of a property.

The facts in the case do not sustain defendant's position. It is true there is a provision in the lease that in case of drilling defendant was to pay plaintiffs ten cents per ton for all limestone products, sand or gravel taken from the ground, but the agreement was broader than that. Defendant agreed to pay plaintiffs $500 per year irrespective of the amount of sand or gravel removed. Defendant specifically stated in the lease: "It is specifically understood and agreed that the Second Party is not obligated to conduct mining or quarrying operations hereunder, but if in any calendar year during the term hereof, the total of royalties payable under paragraph 3 shall be less than $500, then, each year upon the anniversary of this option, the Second Party shall pay to the First Party the amount of such deficiency. * * *."

In addition to the above specific agreement on the part of second party, several statements appear in the agreement which conclusively denominates it as a lease rather than a royalty agreement only. For example, the following clauses appear at various points in the agreement:

"The parties hereto are desirous of entering into a *lease agreement* covering said property."

After the parties had agreed that, upon testing, the contract should become complete, it was stated: "* * * shall cause the *lease agreement* herein contained to be binding upon both parties * * *."

The agreement also states as follows: "The First Party * * * *hereby leases* to the Second Party, for the sole and exclusive purpose of mining * * *." (Emphasis ours.) Without specifically quoting them, in six other sentences in the agreement the word "lease" is used.

Under the above repeated statements appearing in the agreement, calling it a "lease", there is no question nor ambiguity as to the nature of the document.

IV. The other contention made by defendant is that the agreement between the parties was clear and unambiguous as to the right to cancel and it was, therefore, not subject to either interpretation or construction. While this principle of law is well established, the point at which appellant falls into error is that there is an important and well established principle of law as to situations such as the one at bar which supersedes the general principle of nonambiguity. This principle is the one heretofore stated in Division II.

The question has had consideration by the courts of our sister state of Minnesota. In the case of Hanley Falls Creamery Co. v. Milton Dairy Co., supra, plaintiff made a lease to defendant of certain creamery property on the basis of a rental of $15 per month for five years. The lease provided: " 'That in case the said lessee shall cease to use the premises for actual creamery purposes or close the building, this lease shall be canceled and annulled at once by said lessor.' " (Pages 226, 227 of 126 Minn.) Defendant ceased to use the premises for creamery purposes and contended that the lease was canceled. The trial court

held the lease canceled, but the Supreme Court reversed and said in the case: "While formerly a provision in a lease to the effect that it should become 'void' upon the tenant's default * * * it was soon discovered that in practical application this enabled the tenant to nullify the lease merely by taking advantage of his own default, and the great weight of authority now is that whatever the form of language used, whether adapted to the creation of a special limitation or a condition subsequent, such will be construed as the latter * * *."

The legal principle has been stated by the courts in more than fifty cases. In the Pennsylvania case of Wills v. Manufacturers Natural Gas Co., supra, a twenty-year lease was made for the purpose of mining and excavating for gas and oil. Lessee agreed to commence work within 90 days and to prosecute the work diligently, and failing to do so within the time specified he was to pay $1000 annually until the well was completed, at which time the annual payment should cease and lessor should receive royalty. There was a provision in the lease somewhat similar to the provision in the agreement in the case at bar. The provision in substance was that upon failure of the lessee to keep and perform the covenants of the lease, such failure would work an absolute forfeiture of the lease and it would become null and void.

Lessee failed to perform and contended the lease was null and void. The plaintiffs (lessors) had an undoubted right to declare forfeiture but the lessee had no such right, but, though the lessor had his right, he was not, we think, bound to exercise it. His right was optional and elective. "A lessee cannot avail himself of his own act to vacate a lease, on the principle that no man shall be permitted to take advantage of his own wrong." (Page 232 of 130 Pa., page 723 of 18 A.) We are of the opinion that the defendant should have been denied the advantage of their own default.

One recent case is the Texas case of Miller v. Compton, supra. Two years rental was paid which is analogous to the case at bar. Defendants then surrendered possession and declared expiration of the lease. The court said at page 757 of 185 S.W.2d: "Where a lease contract contains a proviso that on

nonpayment of rent the term shall cease, the lessor, and not the lessee, has the elective right of determining it upon breach. 'The principle that no man is permitted to take advantage of his own wrong prevents the lessee from doing so.' "

The principle was again declared in the Texas case of Morris v. De Wolf, supra. This involved rental of a hotel at $100 per month. The lessee agreed to keep a first-class hotel. The lease provided: " 'On failure to do either [pay the rent or keep a first-class hotel], this contract shall cease and terminate.' " The tenant did neither of said two things and the landlord sued for his rent. In this case the court stated: "Where the lease contract contains a proviso that on nonpayment of rent the term shall cease, the lessor and not the lessee has the elective right of determining it upon breach made. The principle that no man is permitted to take advantage of his own wrong prevents the lessee from doing so."

In the Maine case of Unity Co. v. Gulf Oil Corp., supra, the lease provided (page 152 of 141 Me., page 6 of 40 A.2d) : " 'The lessee may, at its option, surrender and cancel this lease * * * and be relieved from the payment of rent or any other obligation as of the date of such surrender.' " Lessee declared surrender and cancellation of the lease. The landlord sued for his rent. The court held he was entitled to his rent and made the following significant and conclusive statement: "In other words, the tenant cannot nullify the lease by taking advantage of his own default and thus escape liability on a burdensome contract."

The Massachusetts case of Markey v. Smith, supra, involved the rental of a mill. The lease provided that it should become null and void upon the tenant's failure, for a 30-day period, to operate the mill.

The court states this was a condition subsequent, exactly the same as the statement in the agreement between the parties in the case at bar was a condition subsequent and also stated that it was a default upon which the lessor alone could terminate the lease and also stated in the opinion that in view of such provision in the lease being a condition subsequent it was not one of which the lessee may avail himself.

The Tennessee case of Bates v. Georgia Fertilizer Co., supra,

had some characteristics similar to the case at bar. It was a lease of land containing phosphate rock which was to be mined on the basis of $1.00 per ton. There was a guarantee in the lease that the lessee should pay $100 per month during the life of the lease. This is similar to the provision in the lease in the case at bar where lessee agreed to pay $500 per year under the lease. If anything the provision with reference to cancellation was stronger than in the instant case. It provided at page 37 of 144 Tenn., page 154 of 229 S.W., as follows: "In case of failure to mine or pay on 100 tons at the end of any month as herein provided, they are to forfeit all rights under this contract, and the same is to immediately become null, void and inoperative, and no re-entry, demand for compliance or money, or any other act or omission on the part of any of the parties to this contract shall be necessary to complete such forfeiture, save simply a failure to mine and ship 100 tons of phosphate or phosphate-bearing rock, or pay on that amount."

The court held that even though no phosphate was mined the lessee was under obligation to pay rent on the basis of $100 per month. This was in accordance with his agreement and the provision for forfeiture was a condition subsequent of which the lessee may not avail himself.

In the California case of Title Insurance & Trust Co. v. Amalgamated Oil Co., 63 Cal. App. 29, 218 P. 71, there was a lease for one year with a sliding scale of monthly payments running from $300 per month up to $600 per month. Drilling for oil was discontinued and the lessee sought to take advantage of the provisions of the lease providing for forfeiture in the event drilling was not done. The court held the agreement was a lease arrangement and that the agreement to pay a certain amount each month was enforceable.

In the case of All-American Oil & Gas Co. v. Connellee, supra, lessee agreed to drill a well within a certain time. It was then provided in the lease that if lessee failed to do so the lease should become null and void. The decision in this Federal Court case held that the lessor was entitled to damages in the amount of $19,500, the cost of drilling a well. The provision did not give the defendant the option to put an end to the obligation of the

contract by breaching "it" and he could not thus deprive lessor of that to which the contract entitled him.

The proposition is well stated from the standpoint of wide acceptance in 32 Am. Jur., Landlord and Tenant, section 825, at page 702: "In the early cases, a provision that a lease should become 'void' on the tenant's default in the performance of stipulations was construed as a limitation, ipso facto terminating the estate on the happening of the contingency. It was soon discovered, however, that in practical application this enabled the tenant to nullify the lease merely by taking advantage of his own default, and the great weight of authority now is that whatever the form of language used, whether adapted to the creation of a special limitation or a condition subsequent, the provision will be construed as the latter unless a contrary intent is clearly expressed."

On the basis of this overwhelming weight of authority defendant cannot take advantage of its own failure to proceed with the drilling, and is clearly liable for the rent for the full five-year term of the lease.

The decision of the trial court is affirmed.—Affirmed.

All JUSTICES concur.